### THE PEOPLE vs. JAMES J. ORCUTT.

It is sufficient, in an indictment for arson in the 1st degree, to describe a building, which has been usually occupied by persons lodging therein at night, as a "dwelling house," although it may not be a dwelling house in the ordinary and popular acceptation of that term.   (2 *R. S.* 657, § 9.)

A person is presumed to intend the ordinary consequences of his acts; and it devolves upon a person charged with crime to rebut this presumption, by evidence of a different intent.

A design to produce death is not necessary to constitute the offence of arson in the first degree, either at common law or under the statute.

It is immaterial whether the person charged with this offence has knowledge that the building burned has usually or at any time been occupied by persons lodging therein.   (2 *Russ. on Crimes,* 552 n. (f), *Phil. Ed. of* 1845).

Any building is a "dwelling house," within the act defining arson in the first degree, which is in whole or in part usually occupied by persons lodging therein at night, although other parts, or the greater part, may be occupied for an entirely different purpose.

Indictment for arson charging the defendant with burning in the night time a dwelling house in the city of Utica, in which there were at the time human beings.   The indictment also contained counts describing the building as a barn, immediately connected with, joined to and a part of a dwelling house.   The fire occurred on the night of the 8th of April, 1851, and was kindled by the prisoner, in a stable or barn in which were several horses.   This stable or barn was connected with and framed into another barn and stable, known as the livery barns. The roofs and frames were united, and the lofts were open from one to the other, and they were occupied by one man and as

The People v. Orcutt.

one barn and stable, and both were entirely destroyed, with eleven horses and a large amount of livery property. The barns and stables were at right angles with each other, the yard being in the angle. At the end of the part known as the livery barn a room was finished off, which was used as an office and a place for buffalo robes, whips, &c., and which was occupied as a sleeping room by the drivers and men employed about the stable. For several years, this part of the building had been constantly occupied as a sleeping room by one or more persons, and at the time of the fire three or more persons habitually slept there, having no other lodging place, and keeping their wardrobe there and were then actually sleeping there. Evidence was given tending to show that the prisoner was guilty of setting the fire. At the close of the evidence for the prosecution,

*F. Kernan,* for the prisoner, insisted that there was a variance between the proof and the indictment, in the description of the building destroyed: that the description of the building in the indictment was untrue; that it was neither a dwelling house nor a barn connected with, joined to and making a part of a dwelling house; that it was a barn, and occupied as such, and should have been so described, with proper averments, to bring it within the class of buildings which the statute declares shall be deemed dwelling houses, in defining the offence of arson in the first degree.

*S. B. Garvin* (district attorney), for the people.

The court decided that there was no variance. That if the building had been usually occupied by persons lodging therein at night, it was well described as a dwelling house within the statute (2 *R. S.* 657, §9); that it was sufficient to name the edifice by the statutory description of a " dwelling house," leaving it for the proof to detail the particulars which entitle it to be thus described, under the statute regulating the punishment of arson.

The cause was summed up by

*J. A. Spencer*, for the prisoner, and
*The District Attorney*, for the people.

The counsel for the prisoner urged, among other things, 1st. That the edifice destroyed was not a dwelling house, within the statute; that the statute was designed to modify the common law and exclude from the first degree of arson the burning of all rough buildings, as barns, sheds, &c., unless actually attached to a building known as a dwelling house in the popular sense. 2d. That the evidence of a malicious intent was wanting, citing and commenting upon *People* v. *Cotteral* (18 *Johns. Rep.* 115). 3d. That a design to produce death was necessary to authorize a conviction of arson in the first degree; that if there was no such design, the offence was mitigated to the second degree.

*The court* charged the jury, 1st. That if from the evidence they were satisfied that the prisoner in setting the fire did not intend to burn the building, but intended to accomplish some other object, the case would be within the *People* v. *Cotteral*, in which the prisoners having been convicted of arson, the judgment was arrested upon the ground that it was proved, beyond all reasonable doubt, that the prisoners merely designed to effect their escape from jail, and did not intend to burn the jail. That the prisoner must be presumed to have intended the ordinary consequences of his acts, and that it devolved upon him to show the absence of an intent to burn the building.

2d. That to authorize a conviction for the offence charged, it was not necessary to establish a design to produce death. That such design did not enter into the offence of arson in the first degree, either at common law or under the statute. That it was immaterial whether the prisoner had knowledge that the building was occupied by human beings lodging therein, either habitually or at the time. It was sufficient if they believed upon the evidence, that the building was in fact thus occupied, and

The People *v.* Orcutt.

that the prisoner willfully burned it in the night time, there being some human being at the time therein, and

3d. That the jury would inquire, 1st. Whether the barn or stable in which the fire was kindled, and that in which was the office and sleeping room, was one and the same building; and 2d. If they did not constitute one building and only one, but were two separate and distinct buildings, whether the former was joined to, immediately connected with and a part of the latter, and if either of these propositions should be found by them in the affirmative, they would inquire, 3dly, whether the building had been usually occupied by persons lodging therein at night, and whether at the time of the commission of the offence there was some human being therein; and that if they were satisfied that the building had been and was thus occupied, the willful setting fire to and burning it in the night time, constituted the offence of arson in the first degree (2 *R. S.* 657, § 9, 10). That the statute had defined a dwelling house, and that within the statute, whether a building was a dwelling house or not, depended upon the fact whether it was usually occupied by persons lodging therein at night, and not upon the popular understanding of that term; that it was not necessary that the whole building should be thus occupied—if a part was occupied as a sleeping room, it was sufficient, although other parts might be used for other and entirely different purposes.

The jury found the prisoner guilty of arson in the first degree, and he was sentenced to be executed. The sentence was commuted by the governor to imprisonment in the state prison for life, on account of the youth of the prisoner, and some circumstances which made it a case proper for the exercise of this power by the executive. The conviction upon the facts, and the decision and charge of the court, were expressly approved by the governor.