SIMON V. N. HAMILTON, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

An indictment for a misdemeanor in voting at a general election, after the accused had been convicted of a felony, need not allege that the defendant voted *knowingly, willfully* and *corruptly;* those words not being contained in the statute. It is sufficient if the indictment follows the language of the statute. And if the offense is well set forth without these words, they are surplusage, and need not be proved.

The insertion of those words, in the indictment, does not prejudice the defendant, and is cured by the statute of jeofails. (2 *R. S.* 728, § 54, *subd.* 4.)

The word "unlawfully," is all that is necessary to characterize the offense, in the indictment. All beyond that is surplusage.

Where the prosecutor offers no proof, on his part, to show that the act charged was willful or corrupt, beyond proving the fact of voting by the defendant, and his conviction, no proof is necessary, on the part of the accused, to show the absence of wilfulness or corruption.

Hamilton *v.* The People.

The defendant, on the trial of such an indictment, for the purpose of rebutting the allegation in the indictment that he voted knowingly, willfully and corruptly, offered to prove that previous to his offering to vote, the Governor, on being applied to for a pardon, had written a letter, to the effect that the defendant would need no pardon for the previous offense, he being a minor; and that upon coming of age he would be entitled to all the rights of a citizen; also that he stated his case to two counselors of the Supreme Court, and was advised by them that rights, including the right of voting, which he had never possessed, could not be taken away from him; that of such rights he was not deprived by the conviction; and that on his coming of age he would be a citizen, and have a perfect right to vote. The names of the counsel were not given, nor did the defendant, in his offer, allege that he believed such advice.

*Held* that the offer must be deemed equivalent to an offer to prove an ignorance of the law, by the defendant; and that it was not broad enough to meet the case. That it was immaterial, and was correctly overruled, because it did not negative the idea, even, that the defendant *knowingly* and *unlawfully* voted.

Every man is bound to know the law; and ignorance of the law is no defense. And every person is bound, in law, to know that while standing as a convicted felon, unpardoned, the statute forbids him to vote.

On the trial of an indictment, the accused cannot be allowed to show, in his defense, an absence of *intent* to commit the offense charged, by proving that he acted under the advice of counsel, and others; especially where he does not allege that he believed or relied upon such advice.

The objection that the offense charged in the indictment, viz., that the accused did the act charged *knowingly*, *willfully* and *corruptly*, was not proved, applies only to a class of cases where *guilty knowledge* is a part of the definition of the offense, and is the material fact to be proved.

THE plaintiff in error was indicted, tried and convicted, in the court of sessions of Tioga county, of a misdemeanor, in having voted at the general election of 1868, for electors of president, &c., governor, &c., member of congress and assembly, &c., having been previously convicted of a felony, and sentenced to two years' imprisonment in the state prison, at hard labor, and not having been pardoned, or restored to citizenship. The case is brought to this court upon *certiorari*. The material facts in the case were undisputed. The errors claimed were such as arose on the trial, which sufficiently appear in the opinion.

Hamilton *v.* The People.

*M. J. Warner*, for the plaintiff in error.

*D. O. Hancock*, (district attorney,) for the defendants in error.

POTTER, J. The statutes of this State in force at the time of voting by the plaintiff in error, and having application to his case, were the laws of 1847, chapter 240, section 15, as follows: "No person shall be permitted to vote at any election, who, previous thereto, shall have been convicted of bribery, or of any other infamous crime, unless he shall have been pardoned and restored to all the rights of a citizen." There is, in another section of another statute, a provision (1 *R. S. p.* 147, § 13, *Edm. ed.*) that "any person not duly qualified to vote under the laws of this State, who shall knowingly vote, or offer to vote, at any general or special town or charter election in this State, shall be adjudged guilty of a misdemeanor," &c. The first cited statute refers to one specified and particular violation; the last, to violations generally, and includes all other cases. The previous conviction for a felony, the sentence thereon, and the service in state prison of the time of such sentence of the plaintiff in error, and the admission, on the trial, that he had never received a pardon from the governor, for said felony and conviction, were all proved or admitted. It was also proved by himself that he was challenged as to his right to vote; that he then claimed his right to vote; that he stated he had all the papers necessary, and that he was not obliged to show them; and that he then voted. On the defense it was offered to be proved that the plaintiff in error had regularly voted in said town, in another district, ever since he became of age, for the purpose of going to the jury on the question of intent in voting in 1868. This evidence was objected to by the district attorney, the objection sustained, and the then defendant excepted. The prisoner's

counsel also proposed to prove, by the father of the prisoner, that before his son was discharged from state prison he and the prisoner applied to the governor for a pardon, and that the governor replied to said application, in writing, that on the ground of the prisoner's being a minor at the time of his discharge from prison, a pardon would not be necessary in his case, and that therefore he would be entitled to all the rights of a citizen on his coming of age. This offer, it was claimed, was proper, to obtain evidence to go to the jury to rebut the allegation in the indictment that he voted knowingly, willfully, and corruptly. This evidence was objected to, the objection sustained, and the prisoner's counsel excepted. It was proved that the prisoner was seventeen years old when convicted of the felony, and was nineteen when discharged from prison. The prisoner's counsel also proposed to prove, for the same purpose of showing intent, that the prisoner, not being entirely satisfied with the governor's letter, stated his case to two respectable counsel of the Supreme Court, and was advised by both of them that rights, including the right of voting, which he had never possessed, could not be taken away from him; that of such rights he was not deprived by the conviction; and that on his coming of age he would be a citizen, and have a perfect right to vote. This evidence was also objected to and excluded by the court, and the prisoner's counsel excepted. This presents all the questions discussed on the argument in this court.

It is claimed by the counsel for the plaintiff in error, that it being charged in the indictment that the defendant therein *wilfully, knowingly* and *corruptly* voted, &c., these charges became material, and the people were bound to prove them. There are several answers to this point. 1st. No objection of this kind was made on the trial; it cannot now be raised, even if it would have been good then. 2d. These words were not necessary to be inserted in the indictment; they are not contained in the statute.

Hamilton *v.* The People.

The indictment would have been sufficient to have followed the words of the statute. The offense was well set forth without them, and they were useless surplusage. 3d. It did not prejudice the defendant, and is cured by what is called the statute of jeofails. (2 *R. S.* 728, § 34, *subd.* 4.) 4th. The presumption of law is, that a man always intends the consequences of his act. (*Van Pelt* v. *McGraw,* 4 *N. Y. Rep.* 110. *People* v. *Orcutt,* 1 *Park. Cr. Rep.* 252.) The word "unlawfully," was all that was necessary as an allegation in the indictment; all beyond this was surplusage. "No person shall be permitted to vote at any election, who previous thereto shall have been convicted of any infamous crime." * * "If any person so convicted shall vote at any such election, unless he shall have been pardoned and restored to all the rights of a citizen, he shall be deemed guilty of a misdemeanor," &c. This is all the legal description, and all that constitutes the offense. The main, and only real questions in the case, arise under the offers of the prisoner on the trial, to give evidence, *first,* to rebut the allegation in the indictment, that the defendant voted knowingly, willfully and corruptly; and, *second,* to show his intention, in voting, in 1868. The *first* offer was needless, as well as useless. The prosecutor made no proof, on his part, to show the act was willful or corrupt, beyond proving the act itself; and we have already said, these words were not necessary in the indictment; so, as they were not otherwise proved, than by proving the fact of voting, by the defendant, and his conviction, no proof was necessary to show the absence of *willfulness* or of *corruption.* The second offer, which may include all that is really in the first, is, to prove in the manner proposed, that there was no *intent* on the part of the prisoner to commit an offense. The whole case is summed up and concentrated in this proposition.

It is needless to cite authority to general propositions so elementary, and so well established, as that it is the

Hamilton *v.* The People.

*intention* with which an act is done, that constitutes its criminality, and, that the act and intent must concur to constitute the crime. These are principles, not rules of evidence. The only point in this case is, whether the rules of evidence permit the intent to be proved in the manner, and by the character of evidence, proposed by the defendant in the indictment. One of the rules of criminal evidence is, that every man is presumed to intend the natural and necessary, and even the probable consequences of an act which he *intentionally* performs. And a rule of presumption is, that no man is ignorant of the law, for the violation of which he may not be excused, though he may be excused for having committed an act by reason of his ignorance of facts, which ignorance of facts he may prove, to rebut the presumption of knowledge, and to show an innocent intent. A good illustration of this distinction is found in a case (*McGuire* v. *State*) reported in 7 *Humphrey,* 54, which was a like case, of indictment for misdemeanor in voting. The court say: "If the party voting know the existence of a state of facts which disqualify him in points of law, (he being held not ignorant of the law,) then he shall be guilty of a misdemeanor." Applying that rule to the case before us, we must hold that the prisoner did know that he had been convicted of a felony; he knew, that not having been pardoned, the statute forbade him to vote. The case further illustrates as follows: "If the voter believes himself to be twenty-one years of age, when he is not, he does not know the existence of the qualifying fact—he may, on the ground of ignorance of the *fact*, be excused." So, too, "if the voter honestly believe, as a fact, that he has resided in the county six months before the election, and it turns out otherwise, he may be excused; but if he actually knew that he had been only four months in the county before the election, yet believed, as a matter of law, that to reside four months was sufficient residence, he shall not be ex-

Hamilton *v.* The People.

cused." So, too, "if a voter believe he was born in the United States, and it turns out, as a fact, that he was born in a foreign country, he may be excused. But if he knows he was foreign born, and has not taken the oath of allegiance to the United States, but has only made his declaration, &c., and thinks the latter, *as matter of law*, entitles him to vote, this will not excuse him, for he voted, *knowing a state of facts to exist*, which in point of law disqualfied him." The statute under which the above decision was made, is as follows: "Any person who shall *knowingly* vote at any election, not being at the same time a qualified voter in the county in which he votes, shall be adjudged guilty of a misdemeanor." He was held bound to know the law. In the case before us the disqualification is plainly written upon the statute, and the defendant not only actually knew the law, but the facts also. The word *knowingly* is not in our statute, as it is in the case in Tennessee. By the rule laid down in the above cited case, every person is bound, in law, to know that while standing as a convicted felon, he is disqualified from voting.

This brings us to the point of the offer made on the trial, by the defendant, to prove that the governor had written the father of the defendant a letter to the effect that the defendant would need no pardon, being a minor; that upon coming of age he would be entitled to all the rights of a citizen. The offer was, not to produce such a letter, nor to prove that the defendant believed or relied upon it; nor was the offer made except upon general grounds. It must therefore be regarded as an offer to prove a reason for the defendant to violate the law on account of his ignorance of the law.

We may also mention here, the other offer, of similar import, to prove by the defendant himself, that not being entirely satisfied with the letter of the governor, he consulted two respectable counselors of the Supreme Court of this State, and that he was advised by both of them

that never having possessed the right of voting, it could not be taken away by his conviction, and that on his coming of age he would have a perfect right to vote. In this offer the names of the respectable counsel are not given, nor does the offer add that the defendant believed such advice. These objections, however, were not made; they must therefore, both alike, be put upon the ground of an offer to prove an ignorance of the law by the defendant. I do not think this offer broad enough to meet the case. If he had proposed to prove that in good faith, and with an honest purpose to ascertain the right, he had made a true statement of his case, and had obtained the advice of counselors of the Supreme Court; that he had received such advice and believed it, and acted upon it; he would have brought himself within the rule laid down in Massachusetts, in *Commonwealth* v. *Bradford*, (9 *Metc.* 272.) The offer, as made, was immaterial, and I think correctly overruled. It did not negative the idea, even, that he *knowingly* and unlawfully voted.

The supposed cases put by the counsel for the plaintiff, in error, as cases in point, are cases of mistakes of *fact*, not of *law*, to wit: "If a man indicted for an attempt to commit burglary, and the proof should be, that he was seen unlocking his neighbor's door, would he be prohibited from showing, on the trial, that he thought he was unlocking the door of his own house?" Certainly not; this would be a mistake fact, of identity. So, too, of the supposed case of a man who had been convicted of felony, but who had received a pardon that was a forgery, and voted, could he be convicted? If he believed the pardon to be genuine, it was a mistake of *fact*, and he might show his innocence; but if he knew of the forgery, then he had no pardon, and the misdemeanor would be aggravated by his voting. This rule, of holding a party responsible for a knowledge of the law, may in many cases seem harsh or oppressive, especially where real ignorance

exists, and where the act may have been committed under mistaken advice ; but the converse of this legal rule, it is believed, would create greater mischief, by opening the door too wide for practical use.   Such advice could always be obtained, and the statute be a dead letter.

*Bishop,* in his treatise on *Criminal Law,* (*vol.* 1, § 375,) says : " We may safely lay down the doctrine, that in no case can one enter a court of justice to which he has been summoned, in either a civil or criminal proceeding, with the sole and naked defense that when he did the thing complained of, he did not know of the existence of the law which he violated." And Lord Hale, in his *Pleas of the Crown,* (*vol.* 1, *p.* 42,) says : " Ignorance of the municipal law of the kingdom, or of the penalties thereby inflicted upon offenders, doth not excuse any that is of the age of discretion, and *compos mentis,* from the penalty of the breach of it ; because every person of the age of discretion, and *compos mentis, is bound to know the law,* and presumed so to do." But he says, " in some cases ignorance of the *fact* doth excuse, for such an ignorance, many times, makes the act itself morally involuntary."

In *Rex* v. *Esop,* (7 *Car. & P.* 584,) it was said by the court, that ignorance of the law is no defense, yet it is a matter to be considered in mitigation of punishment.   In Massachusetts an officer was indicted for taking his just fees, but before they were due ; the statute imposed a penalty.   The court said : " This honest and meritorious officer, by a misapprehension of his rights, received his lawful fee before the service was performed, but which must necessarily be performed at a future day.   If we had authority to interpose, and relieve from the penalty, we should do so ; but we are only to administer the law." (7 *Pick.* 279.)

*Broom,* in his *Legal Maxims,* (*p.* 190,) in commenting upon the maxim, " *Ignorantia facti excusat, ignorantia juris non excusat,*" says : " Ignorance of a material fact may

excuse a party from the legal consequences of his conduct; but ignorance of the law, which every man is presumed to know, does not afford excuse."

It would be difficult for the court to lay down a rule applicable to one misdemeanor, or to a class of misdemeanors, in which ignorance of the law would be a defense, that should not extend to all; or to draw a line between the cases where it might be an excuse, and where not. No such distinguishing line has been attempted on the argument; the books furnish none. No one would claim to say this defense could be used as to offenses *mala in se.* What distinction, then, could be found among those that are *mala prohibita?* It would seem absurd for a person indicted for selling intoxicating liquors to be allowed to prove his ignorance of the offense ; so for selling lottery tickets, horse racing, for violation of the sabbath, for cruelty to animals, &c. Nor would it be excused, should he prove that even counselors at law had advised him that he might do all these things.

The objection that the plaintiff, being a minor when convicted of the felony, and also when discharged from prison, the statute prescribing the punishment for the subsequent misdemeanor did not apply to his case, does not possess sufficient merit to require discussion.

There are some cases cited from other States, which, from a superficial view, would seem to give weight to the objection that the offense charged in the indictment in this case was not proved; to wit, that the defendant *knowingly*, *willfully* and *corruptly* voted, &c. This objection applies, and applies only, to a class of cases where *guilty knowledge* is a part of the definition of the offense, and is the material fact to be proved, as, for instance, the crime of forgery, or the passing of counterfeit bills, notes, &c. The essence of the crime consists " in *knowing* the same to be forged or counterfeited," and, "*with intention* to have the same uttered or passed." So in perjury, the crime consists

Hamilton *v.* The People.

in *willfully and corruptly* swearing false. So in England, a statute that no person shall expose to sale metal buttons marked with the word "gilt," (the same not being really gilt,) *knowing the same not to be gilt, &c.* In these cases the allegation of *guilty knowledge,* and of *willful* and *corrupt* false swearing, are the material essence of the crime, and should be both alleged and proved. The general rule, however, is that matters which are not material to be alleged, and which do not define the offense, if stated in the indictment, are to be regarded as surplusage, and do not vitiate, and need not be proved. It is claimed that the case of *The Commonwealth* v. *Bradford,* (9 *Metc.* 268,) is an authority against the rule we have laid down, "that every man is bound to know the law, and that ignorance of the law is no defense." That was an indictment under a statute, (*Gen. Stat. Mass.* 61, § 28,) which reads as follows: "Whoever, *knowing* that he is not a qualified voter at an election, *willfully* votes for any officer to be then chosen, shall forfeit a sum not exceeding one hundred dollars." The indictment, as was proper, alleged the *knowledge* and the willful voting. *Knowledge* was a fact, and was a part of the statute description of the offense, and proof of it became material. When proved as a fact, the defendant, it was held, had a right on the trial to show, in his defense, "that in good faith, with an honest purpose to ascertain the right, he made a true statement of the facts to a professional man." The court held this would be competent as bearing upon the question of his *knowledge* of his right to vote. That is not in conflict with our rule. But it is in conflict with a case decided in North Carolina, (*State* v. *Boyette,* 10 *Iredell,* 336.) The defendant was indicted there, under the provisions of a statute, in the following words: "If any person shall hereafter knowingly and *fraudulently* vote at any election," &c. The statute required six months residence of the voter; the defendant had resided but four months. He offered, on the trial,

---

Hamilton *v.* The People.

---

the evidence that a very respectable gentleman had advised him that he had a right to vote on four months' residence. The evidence was excluded. The court held that the maxim that ignorance of the law excused no man, applied, and sustained the ruling. The same rule was held in *State* v. *Hart,* (6 *Jones' N. C. Rep.* 389.) The court holding, " the defendant voluntrily gave an illegal vote, and necessarily the unlawful purpose attached, *prima facie,* to the act; that it is neither an excuse or justification for such an act, that other persons thought or believed it to be lawful." And a like doctrine is found in 7 *Blackf. Ind. Rep.* 607.

We have thus reviewed all the cases bearing on this question, coming under our view, at greater length than the importance of the particular case before us would seem to require; but, so far as I can discover, it is the first case of judicial construction of the statute in question, though it involves questions affecting one of the most important privileges of a citizen, the right of franchise. In this view, its importance seemed to call for its extended examination. The result is, the verdict is right, and the case should be remanded to the court of sessions of Tioga county, to proceed to carry into effect the verdict of the jury.

PARKER, J., concurred in the result.

MILLER, P. J., was inclined for a new trial.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, October 4, 1870. *Miller,* P. J., and POTTER and PARKER, Justices.]