## STATE OF MINNESOTA *vs.* JOHN L. ARMINGTON.

### April 25, 1878.

Challenge of Jurors.—In impanelling a jury for the trial of an indictment, according to correct practice under the provisions of Gen. St. *c.* 116, regulating challenges, all challenges by either party to an individual juror, whether for cause or peremptory, should be interposed and determined when he is called, and in the prescribed order, before proceeding further in the call.

Bigamy—Indictment—Proof of alias name of defendant.—An indictment for bigamy, in the form prescribed by the statute, is sufficient. The indictment alleged that defendant "unlawfully married one Susie E. Roe, whose true name was, and is, Susan E. Weller." An omission to prove the latter part of the averment, where the proofs showed a marriage with a person, known among her acquaintances by the name of Susie E. Roe, and who assumed that name at the time of such her marriage, *held* insufficient as a ground for dismissing the action.

Proof of Marriage.—In all cases in this state, the fact of marriage, if necessary to be established under the issue, may be proved by any competent evidence of the character indicated by the provisions of Gen. St. *c.* 73, § 89.

Foreign Divorce while parties are domiciled in Minnesota.—A decree of a pro-
bate court of the territory of Utah, dissolving the marriage relation be-
tween persons citizens of this state, while they remain domiciled
herein, is a nullity.

Same—Where Decree does not show Residence, etc., of Parties.—A decree of
divorce of such court that does not show upon its face the residence or
domicile of either of the parties thereto at the time it was made, or when
the proceedings were instituted which resulted in the decree, is void.

Same—Remarriage on faith of Void Decree of Divorce.—A party who marries a
second time, upon the faith of such void decree, is not protected from
the penal consequences of his act, because of his ignorance of its real
character; neither can he prove his ignorance or belief in respect to it,
to disprove a criminal intent.

The defendant was tried in the district court for Hennepin
county, before *Young*, J., and a jury, upon the following
indictment:

[Title.] "John L. Armington is accused by the grand-jury
of the county of Hennepin, in the state of Minnesota, of the
crime of polygamy, committed as follows: The said John L.
Armington, on the twenty-first day of January, A. D. 1877,
at the city of Minneapolis, in said Hennepin county, wilfully,
unlawfully and feloniously, having a wife then living, unlaw-
fully married one Susie E. Roe, whose true name was and is
Susan E. Weller, contrary to the statute in such case made
and provided, and against the peace and dignity of the state
of Minnesota." [Duly signed and endorsed.]

When the first juryman was called, the court required the
defendant to interpose his challenges to such juror, or he
would be accepted and sworn in. Thereupon the defendant's
counsel demanded that twelve jurymen be called and placed
in the jury-box before defendant should be required to inter-
pose his challenges. The court denied this request, and or-
dered that the challenges be interposed to each juryman as
he was called, to which refusal and order the defendant ex-
cepted. Thereupon a jury of twelve men was called and
sworn in accordance with the order of the court. The de-
fendant objected to the admission of any evidence in support

of the indictment, on the ground (1) that the acts charged as the offence are not set forth in ordinary and concise language, without repetition; (2) that such acts are not set forth with such degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case; (3) that there is no offence set forth in the indictment in the language of the statute creating the offence, nor is it set forth in accordance with the form prescribed by statute. The objection was overruled, and the defendant excepted.

To prove the former marriage of defendant to a wife known as Martha F. Armington, and who was living and present at the trial, the state offered no direct evidence of a marriage contract, but introduced evidence that for some twenty years, and for more than ten years in this state, the defendant and such alleged former wife had lived together and been commonly reputed as husband and wife; that he had treated and introduced her as such, and had made, in his family bible, a record of a marriage between himself and her, and of the birth of the children who were the issue of such marriage. To prove the second marriage charged in the indictment, the state introduced a license, dated January 19, 1877, for the marriage of defendant and one Susie E. Roe, a certificate by the officiating clergyman, and his oral testimony that on January 21, 1877, he solemnized a marriage between them. At the close of the case for the state, defendant moved the action be dismissed and for a discharge, on the ground that the testimony introduced was insufficient to prove him guilty of the crime charged, for (1) the evidence was insufficient to prove a former marriage, and (2) there was no evidence to prove defendant's marriage to Susan E. Weller. The motion was denied, and defendant excepted.

The defendant offered in evidence a certified copy of a decree of divorce between himself and the Martha F. Armington named by the witnesses for the state, having first testified to the identity of these persons and those named in the decree. The copy offered is as follows:

"UNITED STATES OF AMERICA: IN THE PROBATE COURT IN AND
FOR BOX ELDER COUNTY IN THE TERRI-
TORY OF UTAH.

*"Special Term, Dec. 18, A. D. 1876.*

"JOHN L. ARMINGTON, Plff.,  ⎫
     *versus*       ⎬ In Divorce.
MARTHA F. ARMINGTON, Deft. ⎭

"This cause coming on for hearing at a special term of the probate court, holden December 18, A. D. 1876, the honorable Samuel Smith, the judge thereof, presiding, and it appearing to the court that service of the summons herein has been duly made upon the said defendant, Martha F. Armington, and the said defendant failing to appear and answer the complaint of the plaintiff on file herein, the same is taken as confessed. And after hearing the evidence in this case, and being fully advised in the premises, the court is of the opinion that the averments made in said petition of plaintiff herein filed are substantially true, that the said parties cannot live in peace and union together, and their welfare requires a separation; and the matter so proven being sufficient to entitle the plaintiff to the relief prayed for:

"It is therefore ordered, adjudged and decreed by the said court, by virtue of the power and authority therein vested, and in pursuance of the statute in such case made and provided, that the marriage between the said plaintiff John L. Armington, and the said defendant Martha F. Armington, be dissolved, and the same is hereby dissolved accordingly; and the said parties are, and each of them is, hereby divorced, freed and absolutely released from the bonds of matrimony, and all the obligations thereof.

      "Signed,              SAMUEL SMITH,
                              "Probate Judge."

[Certified by the clerk of the court under his hand and the seal of the court, with the certificate of the judge, in conformity with the act of congress.]

The counsel for the state objected to the admission of the paper, on the ground (among others) that the testimony, as it then stood, showed that the parties were both residents of Minnesota down to the date of the paper. The objection was sustained, and the defendant excepted. The defendant's counsel again offered to show by the paper and the parol testimony of the defendant that, at the time of his second marriage, he had this paper in his possession, and believed the decree to be effectual to make him a single man, and believed himself to be such, and that he would not have married again had he not so believed; and that he had submitted the paper to an attorney in good standing in this state, and had been by him advised that the paper was sufficient, and that he got married relying on such advice and the copy of the decree, and believing that he had a right to. All this evidence was excluded, on objection that it was incompetent, irrelevant and immaterial, and the defendant excepted.

The defendant was convicted, a motion for a new trial was denied by *Vanderburgh* and *Young*, JJ., and he was sentenced to the state prison for two years, from which judgment this appeal is taken.

*Reynolds & Bowe* and *Smith & Hale*, for appellant.

*Geo. P. Wilson*, Attorney General, and *Geo. R. Robinson*, for the state.

CORNELL, J. The subject of challenging jurors in this state is made a matter of statutory regulation. It is made the duty of the court to inform the defendant before a juror is called, that, "if he intends to challenge an individual juror, he shall do so when the juror appears, and before he is sworn." Gen. St. *c.* 116, § 10. "A challenge to an individual juror is either peremptory or for cause." Id. § 11. "It shall be taken when the juror appears and before he is sworn." Id. § 12. It is also provided that "all challenges to an individual juror shall be taken first by the defendant, and then by the state; and each party shall exhaust all his challenges before the other begins." Id. § 33. A peremptory challenge is
v.25M—3

declared to be "an objection to a juror for which no reason need be given, but upon which the court shall exclude him." Id. § 13, as amended by Laws 1868, c. 86. If the offence charged is punishable with death, or with imprisonment for life, the state is entitled to seven peremptory challenges, and the defendant to twenty. For any other offence, the state is entitled to two, and the defendant to five. Save as above, the statute is silent as to the time when the right of peremptory challenge shall be exercised by the accused; neither does it contain any provision, like the Wisconsin statutes under which the case of *Lamb* v. *State*, 36 Wis. 424, cited by defendant, was decided, plainly implying that a jury must be called and in the box before the accused shall be required to exercise his right. On the contrary, the foregoing provisions seem clearly to indicate that each party is required to make and exhaust all his challenges to each juror as and when he is called, before he is sworn, and in the order stated, and such, in effect, was the ruling of this court in *State* v. *Brown*, 12 Minn. 538, in which it was held that the course pursued by the court in swearing each juror separately, and before the full jury was present in the box, was correct practice under the statute.

The indictment in this case follows the precise form prescribed by the statute for an indictment of this character. Gen. St. c. 108, § 2, No. 25. It must, therefore, be held good. *Bilansky* v. *State*, 3 Minn. 313, (427;) *State* v. *Ryan*, 13 Minn. 370; *State* v. *Thomas*, 19 Minn. 484. The gist of the offence charged was unlawfully contracting a second marriage with the party named in the indictment, while the accused had a wife then living. It was stated with sufficient precision to apprise him of the particular offence which he was required to meet, and as the general averment, "that he had a wife then living," was sufficient, under the statute, to admit proof of the former marriage and its validity, it was unnecessary to state in the indictment the time and place when and where it was consummated, or the maiden name of the former

wife.   See *Hutchins* v. *State*, 28 Ind. 34; *State* v. *Bray*, 13 Ired. 289.

Another error alleged by defendant is upon the ruling and instruction of the trial court, upon the sufficiency and effect of the evidence which was introduced to establish the existence of the defendant's former marriage.   In order to a conviction, in a case of this character, the rule undoubtedly requires proof, by competent evidence, of a prior, legal marriage in fact; and such fact must be established to the satisfaction of the jury beyond a reasonable doubt.   Formerly, such fact could only be proved by direct evidence.   This rule, however, has been changed by our statute, (Gen. St., *c.* 73, § 89,) which in terms enacts that, "when the fact of marriage is required or offered to be proved before any court, evidence of the admission of such fact by the party against whom the proceeding is instituted, or of general repute, or of cohabitation as married persons, or any other circumstantial or presumptive evidence from which the fact may be inferred, shall be competent."   Under this statute, indirect and circumstantial evidence of the character indicated is not only admissible in all cases for the purpose of establishing the fact of marriage, but such fact may be proved by such evidence alone, whenever its strength and weight are such as reasonably to produce upon the mind of the jury that degree of conviction requisite in all criminal proceedings.   *State* v. *Johnson*, 12 Minn. 476.   In reference to this matter, we discover nothing in the conduct of the trial, or in any ruling of the district court, at all in conflict with these views, or calling for a new trial.

The indictment alleges that defendant "unlawfully married one Susie E. Roe, whose true name was and is Susan E. Weller."   It is objected that the court erred, at the close of the testimony for the prosecution, in not granting defendant's motion to dismiss, for the reason that there was "no evidence to prove his (defendant's) marriage to Susan E. Weller."   This averment as to the name was descriptive of the person, and not of the offence.   Its only office or importance was to

designate and identify the particular individual with whom it was alleged the defendant formed the unlawful marriage relation. The accusation is that he "married one Susie E. Roe." The proofs showed that the person whom in fact he married bore that name among her acquaintances, and at the time of her marriage to defendant. She is thus described in the "license to marry" and the "certificate of marriage," which were introduced in evidence. Her identity is unquestioned, and there is no pretence that the accused was misled by the additional descriptive averment in the indictment, that her "true name was and is Susan E. Weller." Whether, therefore, it was sufficiently proved or not by the evidence, is immaterial.

The remaining question for consideration relates to the decision of the court excluding what purports to be an authenticated copy of a decree of divorce of the "probate court in and for Box Elder county, in the territory of Utah," entered in that court at a special term, on December 18, 1876, in an action between John L. Armington, plaintiff, v. Martha F. Armington, defendant, dissolving the marriage contract between them. Among the objections made to this evidence, was the one that, at the time the decree purports to have been rendered, both parties thereto were residents of this state, and had been for several years prior. When this evidence was offered, it incontestably appeared, from the testimony already given, that both the defendant and his said wife, Mrs. Martha F. Armington, had been resident citizens of this state, and domiciled therein, for over nine years prior to the date of the decree, and that they were both actually living in this state at the time of its entry. It did not appear, nor was any offer made to show the fact, that either had ever been domiciled, even temporarily, within the territory of Utah; and as to Mrs. Armington, it is quite clear that she never, at any time during the progress of the proceedings in said court, was outside the limits of this state, or within the territorial limits of Utah. As to Mr. Armington, the most that can be claimed

from the evidence is that he temporarily left his residence in Northfield, in this state, sometime in the summer of 1876, and returned in August or September of that year. Where he was, during this period, does not affirmatively appear; but it does affirmatively appear that he has resided and practised medicine in Northfield ever since November in that year. Upon this evidence, the court was warranted in assuming that neither of the parties ever acquired a *bona-fide* domicile or residence in Utah, and that both were, during the conduct of these divorce proceedings, domiciled residents of this state, and subject to its laws. Upon this state of facts, the probate court of Utah, whatever may have been the extent of its jurisdiction over the subject of divorce under the local laws of that territory as respects its citizens, had no jurisdiction to adjudicate upon the marriage relation existing between these parties. To each state belongs the exclusive right and power of determining upon the status of its resident and domiciled citizens and subjects, in respect to the question of marriage and divorce, and no other state, nor its judicial tribunals, can acquire any lawful jurisdiction to interfere in such matters between any such subjects, when neither of them has become *bona fide* domiciled within its limits; and any judgment rendered by any such tribunal, under such circumstances, is an absolute nullity. *Ditson* v. *Ditson,* 4 R. I. 93; Cooley Const. Lim. 400, and notes; *Kerr* v. *Kerr,* 41 N. Y. 272; *Hoffman* v. *Hoffman,* 46 N. Y. 30; *Hanover* v. *Turner,* 14 Mass. 227. It does not appear upon the face of the judgment or decree, or in any of its recitals, that either of the parties were ever residents of said territory of Utah, or domiciled therein. This is a jurisdictional matter, which should appear, ʲo entitle the judgment to any respect whatever; for though it be conceded that the probate court that rendered the judgment was in the legal sense a court of record, "its jurisdiction," if any, under the local laws of the territory, "over the subject of divorce, was a special authority not recognized by the common law, and its proceedings in

relation to it stand upon the same footing with those of courts of limited and inferior jurisdiction," unaided by any legal presumptions in their favor. *Com.* v. *Blood*, 97 Mass. 538. The evidence was properly excluded.

To disprove any criminal intent, the record was also offered in evidence, coupled with an offer to show that the defendant, acting under the advice of counsel, believed in the validity of such alleged divorce, and that he contracted his second marriage in this belief. In defining the offence of polygamy, the statute declares that "if any person who has a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife, he or she shall," except in the cases therein specified, "be deemed guilty of the crime of polygamy." The excepted cases refer to a marriage after a legal divorce, by one not the guilty cause thereof, and to one innocently contracted under a belief that the former wife or husband is dead, when such wife or husband has been continuously absent, either beyond the sea or after a voluntary withdrawal, and without being heard from alive, for the period of seven years. It will be observed, from these provisions, that in a case like the one at bar, the existence of a criminal intent, in fact, on the part of the accused, is not an essential ingredient of the statutory crime charged. If the facts specified in the statute are shown to exist, the law presumes the guilty knowledge and intent. *Hamilton* v. *People,* 57 Barb. 625. If the pretended decree of divorce upon which he relied was in fact illegal and void, because made by a court having no jurisdiction, it afforded him no protection against the consequences of a second marriage, whatever may have been his motives or his belief in respect to the validity of the decree. His mistake or ignorance, if any, was one of law, and not of fact. His case, therefore, is one to which the maxim, *ignorantia juris non excusat,* applies. Being, together with his lawful wife, a resident citizen domiciled in this state and subject to its laws, he was bound to know that the tribunals of no other state or territory could rightfully take cogni-

zance and jurisdiction over their marital relations, for the purpose of decreeing their dissolution; neither could they acquire such jurisdiction through any act of the plaintiff in temporarily changing his domicile, when done with no *bona-fide* intention, but for the sole purpose of procuring a divorce in fraud of the laws of the state to which he owed allegiance.

Judgment affirmed.