# 198 PEOPLE v. BARBER.

## THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. LUCY BARBER, Appellant.

*Indictment charging a female with voting at an election — what statement of facts is sufficient to establish the offense — section 1 of article 2 of the Constitution excludes all persons not embraced in it — the right to vote must be conferred by law to entitle any person to exercise it.*

An indictment charged that at a general election, held in the town of Alfred, county of Allegany, on November 3, 1886, for the election of certain officers therein mentioned, the defendant, "then and there being a female and a person not duly qualified to vote at such election, under the laws of the State of New York, then and there knowingly, maliciously, willfully and unlawfully did offer to vote, and did vote, at said election so held, as aforesaid, for the officers to be elected, as aforesaid, she, the said Lucy Barber, then and there well knowing herself not to be a duly qualified voter at such election, and not to be duly qualified to vote thereat."

*Held*, that as the alleged crime was illegal voting, and the alleged disqualification was that the defendant was a female, the indictment contained a sufficient statement of the facts constituting the offense.

The statute (1 R. S. [7th ed.], 400), pursuant to which the prosecution was instituted, provides that "any person not duly qualified to vote under the laws of this State, who shall knowingly vote, or offer to vote, at any general or special town or charter election in this State, shall be adjudged guilty of a misdemeanor."

It was contended that the defendant was not, within the meaning of the statute, "a person not duly qualified to vote under the *laws* of this State," because the provision of the Constitution (§ 1 of art. 2), defining the qualification of voters, was not "law," as that term is ordinarily applied, and, therefore, the statute cited has no application to the case presented by the indictment.

*Held*, that this contention could not be sustained, as the provision of the Constitution referred to is the law of the State upon the subject, and must be so treated, as effectually as if it were engrafted into a statute.

That the fact that section 1 of chapter 130 of 1842, prescribing the qualifications of electors, which contained the word "male," was repealed by chapter 240 of 1847, and that, since then, there has been no statute on the subject embracing that term by way of limitation, has no significance on the question under consideration.

That, if it should be assumed that disqualification was dependent upon a constitutional or statutory enactment to that effect, the provisions of section 1 of article 2 of the Constitution, declaring that every *male* citizen shall, in the cases therein mentioned, be entitled to vote, would have the effect to exclude from the exercise of such right all persons not embraced within it.

That the elective suffrage is not a natural right of the citizen, but a franchise dependent upon law by which it must be conferred to permit its exercise.

That the only questions of fact for the jury were whether the defendant was a female and voted at the general election, as charged in the indictment.

That it was not necessary for the people to show that the accused was disqualified to vote, either by statute or at common law, but only that she was not included in the terms of qualification prescribed by the laws of this State. (Per DWIGHT, J.)

APPEAL from a judgment of the Court of Sessions of Allegany county, entered upon a conviction of the defendant of the crime of illegal voting.

*Frank S. Smith*, for the appellant.

*Rufus Scott*, for the respondent.

BRADLEY, J.:

The indictment charges that at a general election held in the town of Alfred, county of Allegany, on November 3, 1886, for the election of officers therein mentioned, the defendant "then and there being a female and a person not duly qualified to vote at such election, under the laws of the State of New York, then and there knowingly, maliciously, willfully and unlawfully did offer to vote, and did vote, at said election so held, as aforesaid, for the officers to be elected as aforesaid, she, the said Lucy Barber, then and there well knowing herself not to be a duly qualified voter at such election and not to be duly qualified to vote thereat," etc. The defendant demurred to the indictment on the grounds (1.) That the facts stated in it did not constitute a crime; (2.) That it did not conform to the requirements of sections 275, 276, of the Code of Criminal Procedure, in that it did not charge the defendant with any crime having a name, and did not contain a description of any misdemeanor within any statute. The demurrer was overruled. The defendant then pleaded not guilty. And upon the trial made a motion to quash the indictment upon the same grounds, which was denied.

It appeared that at the general election held at the place mentioned in the indictment the defendant offered to vote, and her right being challenged she took the usual and requisite oath, and the ballots offered by her were received by the inspectors and deposited in the ballot boxes. The statute, pursuant to which the prosecution was instituted and had, provides that "any person not duly qualified to vote under the laws of this State, who shall knowingly vote or offer to vote at any general or special town or charter

election in this State, shall be adjudged guilty of a misdemeanor, and on conviction shall be imprisoned for a period not exceeding six months," etc. The disqualification in view to support the charge of offense was that the defendant was a female. It is contended that the fact so relied upon is not alleged in the indictment, and that the reference made to the fact that the person charged was a female was mere matter of description rather than of allegation. We think the indictment was sufficient in that respect. And that founded upon that fact assuming that it was a disqualification the offense was sufficiently described. It is true that a statement of the facts constituting an alleged crime is essential to support an indictment. (Code Crim. Pro., § 275.) And such has been the long standing rule founded upon the reason that by a presentment so made the party should be well advised of the character of the offense charged against him. (*Wood* v. *People*, 53 N. Y., 511; *People* v. *Wilber*, 4 Park. Cr. R., 19; *People* v. *Standish*, 6 id., 111; *Pearce* v. *State*, 1 Sneed, 63; 60 Am. Dec. 135.) The sufficiency of statement is dependent upon the information it may furnish, and when an offense may result from one of two or more causes, the one upon which the alleged crime is sought to be predicated must be stated. (*People* v. *Dumar*, 106 N. Y., 502.) In the case at bar the alleged crime was illegal voting, and the alleged disqualification was that the defendant was a female. This was a sufficient statement of the facts constituting and which produced the offense upon the assumption before mentioned. (*Hamilton* v. *People*, 57 Barb., 625.) It is, however, said that the defendant does not come within the "meaning of" a person not duly qualified to vote under the laws of this State, "because the provision of the Constitution defining the qualification of voters is not law as that term is ordinarily applied, and therefore the statute creating the crime and providing for its punishment, has no application to the case presented by the indictment. This view cannot be supported. The provision referred to of the Constitution is the law of the State upon that subject and must be so treated as effectually as if it were engrafted into a statute, and the fact that the section of the act of 1842, which contained the word "male," was repealed by the act of 1847 (chap. 240), and that since then there has been no statute on the subject embracing that term by way of limitation, we think has no significance on

the question now under consideration. That provision of the Constitution required no legislation to give effect to it as a governing rule of law, nor can we adopt the view of the learned counsel for the defense, that persons not designated in that provision of the Constitution are not excluded from the right to vote. The view thus contended for would render the provision substantially nugatory, except as a guaranty to those so designated against disfranchising legislation, and lead to the conclusion that while it declares that male citizens of the requisite term of citizenship, inhabitancy and residence, are entitled to vote at elections, it has the effect to exclude none from the exercise of the elective franchise (Const., art. 2, § 1), and that no persons are denied such right other than such as may come within the second section of that article and those who may by statute be disqualified.

If it be assumed that disqualification was dependent upon constitutional declaration or statutory enactment to that effect, the conclusion, we think, would be required that the provisions of section 1 of article 2, before referred to, would have the effect to exclude from the exercise of such right all persons not embraced within it, notwithstanding the fact that the legislative power of a State is not derived from its Constitution, but is merely limited and qualified by it, because having designated the persons who are entitled to vote at elections, the provision in that respect has the effect to negative the right of the elective franchise to all others, and the maxim *expressio unius est exclusio alterius*, is applicable to its construction. (*People* v. *Pease*, 27 N. Y., 45, 52, 53.) But the fact that the defendant is a citizen of this State and of the United States, does not invest her with this privilege. The elective suffrage is not a natural right of the citizen. It is a franchise dependent upon law by which it must be conferred to permit its exercise. (*Spencer* v. *Board of Registration*, 1 McArthur, 169 ; 29 Am. R. 582.)

It is a political right to be given or withheld at the pleasure of the law making power of the sovereignty, and is not deemed to be within the privileges and immunities guaranteed to the citizen by the Constitution of the United States (art. 4, sec. 2), as those terms have been understood and applied, and, therefore, no such right was derived from their use in the fourteenth amendment to that instru-

ment, which merely furnished additional guaranty for the protection of the privileges and immunities of the citizen without extending their import. (*Van Valkenburg* v. *Brown*, 43 Cal., 43; 13 Am. R., 136; *Minor* v. *Happersett*, 21 Wall., 162; *U. S.* v. *Cruikshank*, 92 U. S., 542.) The defendant was "a person not duly qualified to vote under the laws of this State," within the meaning of the statute under which she was convicted. And she must be deemed to have known the law on the subject, and, therefore, having knowingly voted, subjected herself to liability to punishment pursuant to that statute. It would seem to follow that the only questions of fact for the jury, were whether the defendant was a female and voted at the general election as charged in the indictment. Those questions were submitted to them, and evidently were found in the affirmative by the jury. There was no ruling by the court at the trial to the prejudice of any of the legal rights of the defendant.

We have, with interest, examined the extended argument in the brief of the learned counsel for the defendant, embracing, as it does, much historical research and information relating to the influential part taken by women from an early period in the conduct of public affairs, civil and political, and bearing generally upon the subject of female suffrage. But in the view taken of this case, we think that portion of it has no necessary application to the questions presented on this review. The propriety of extending the elective franchise to females is not here for consideration, and we cannot now deal with that question, but for the purpose of the determination of this case must treat and apply the law as it exists in that respect. No further question seems to require consideration.

The judgment should be affirmed.

BARKER, P. J., and HAIGHT, J., concurred.

DWIGHT, J.:

I concur in the opinion of Justice BRADLEY, especially on the ground that, by definition of the offense charged, non-qualification and not disqualification is the condition and test of illegal voting. It was not necessary for the people to show that the accused was disqualified to vote, either by statute or at common law; but only that she was not included in the terms of qualification prescribed by the laws of this State.

The language of the criminal statute is, "any person not duly qualified to vote, under the laws of this State, who shall knowingly vote * * * shall be adjudged guilty of a misdemeanor." The only qualifications prescribed by the laws of this State, are those defined by article 2, section 1 of the Constitution; and that definition includes only male citizens. The defendant was not a male citizen; hence she was a person not duly qualified to vote under the laws of this State; and, having voted, she was, by definition of the offense, guilty of a misdemeanor.

Judgment and conviction affirmed, and proceedings remitted to Court of Sessions of Allegany county to proceed thereon.