# CITY OF MINNEAPOLIS v. WILLIAM KREBES.

226 N. W. 2d 617.

February 28, 1975—No. 44880.

*Bloedel, Slade & Volstad* and *Philip John Bloedel,* for appellant.

*Walter J. Duffy, Jr.,* City Attorney, and *Larry L. Warren,* Assistant City Attorney, for respondent.

SCOTT, JUSTICE.

Defendant appeals from an order of the Hennepin County Municipal Court finding him guilty of violating Minneapolis Code of Ordinances, § 643.010, by failure to comply with an order of the fire department.[1] Defendant challenges his conviction on the

---

[1] Applicable ordinance provisions are as follows: "643.010. The Fire Prevention Code, 1970 Edition, recommended by the American Insurance Association is hereby adopted and incorporated in this Chapter as fully as if set forth herein, at least one copy of said code being marked as an official copy and filed in the office of the City Clerk, and the same shall be in force and effect as the fire prevention code for the City of Minneapolis except such portions as are hereinafter modified or amended."

"641.130. The Chief of the Fire Department or his authorized inspectors or assistants, are hereby given authority to order and compel compliance with the regulations contained in the Fire Prevention Code and order any condition removed or remedied in such manner as to secure such compliance. The foregoing authority shall be in addition to any other provisions of this code of ordinances."

grounds that the fire prevention code incorporated into the Minneapolis Code of Ordinances by § 643.010 does not apply to the alleged deficiency in his building or that the ordinance under which he was convicted was unconstitutional because of vagueness and because it improperly delegated legislative power. We affirm.

Defendant has been the owner of a three-story, 28-unit apartment building located at 2120-22 Aldrich Avenue South in Minneapolis since 1951. The building has two staircases, one in the rear constructed of concrete and properly enclosed by fire walls and fire doors, and one in the front constructed of wood with wool carpeting and enclosed with fire walls and fire doors only from the boilerroom in the basement.

On April 18, 1969, defendant was ordered by the fire department to enclose the front stairway. After reinspection a second order was issued on September 20, 1973. This order provided: "Enclose open stairway with a one hour fire separation complete with B label doors, frames, closers, and door sets, to comply with Article 643 Section 1.5-f of the Fire Prevention Code."[2] A tag was issued on October 10, 1973, for violation of Minneapolis Code of Ordinances, § 641.150.

"641.150. The owner, agent, lessee, occupant or person responsible for the conditions to be removed or remedied shall comply with such written order or orders within the time and in the manner directed. Failure to comply with any such written order of the Chief of the Fire Department or his authorized inspectors or assistants, shall constitute a violation of this ordinance."

"641.180. The continued violation of this Chapter or failure to neglect to comply with orders served pursuant to the provisions hereof, shall, except as otherwise provided, be and constitute a separate offense for each day such violation, failure or neglect continues beyond the period of limitation stated in such order or orders, or beyond a reasonable period of time after serving such orders."

[2] Section 1.5 provides as follows: "Whenever any of the officers, members or inspectors of the Fire Department or Bureau of Fire Prevention as mentioned in section 1.4 *shall find* in any building or upon any premises *dangerous or hazardous conditions* or materials as follows,

Defendant argues that § 1.5 should be narrowly construed so that a building with more than one staircase, one of which was properly enclosed by fire walls and fire doors, would be outside its provisions. Section 1.1 of the fire prevention code states the intent of the code as follows:

"It is the intent of this code to prescribe regulations consistent with nationally recognized good practice for the safeguarding to a reasonable degree of life and property from the hazards of fire and explosion arising from the storage, handling and use of hazardous substances, materials and devices, and from conditions hazardous to life or property in the use or occupancy of buildings or premises."

At the trial, a representative of the fire department explained that an open stairway creates a life-safety hazard by providing an open shaft for hot gases and smoke to rise, thus enhancing the possibility of death to those on the higher floors. We reject defendant's reading of § 1.5-f which would limit its application to a requirement of one safe means of egress. We hold that the order of September 20, 1973, was consistent with the intent of the code and was a valid application of § 1.5-f.

Defendant also argues that the provisions of the fire prevention code are unconstitutionally vague. We agree with the lower court's view that "lack of adequate exit facilities * * * or any other * * * hazardous condition" is sufficiently definite.

Finally, defendant contends that the fire prevention code gives to the fire department uncontrolled discretion in determining

he or they shall order such dangerous conditions or materials to be removed or remedied in such manner as may be specified by the Chief of the Bureau of Fire Prevention.

\* \* \* \* \*

"f. *Any building or other structure which, for* want of repairs, *lack of adequate exit facilities,* automatic or other fire alarm apparatus or fire extinguishing equipment, or by reason of age or dilapidated condition, or from any other cause, *creates a hazardous condition.*" (Italics supplied.)

which acts or omissions of an individual are unlawful and thus amounts to a delegation of legislative power.

In Lee v. Delmont, 228 Minn. 101, 36 N. W. 2d 530 (1949), this court discussed the constitutional limitations on the delegation of power by a legislative body.[3] It is against the following standards announced therein that the fire prevention code must be measured.

"* * * Although purely legislative power cannot be delegated, the legislature may authorize others to do things (insofar as the doing involves powers which are not exclusively legislative) which it might properly, but cannot conveniently or advantageously, do itself. * * * It does not follow, because a power may be wielded by the legislature directly, or because it entails an exercise of discretion and judgment, that it is exclusively legislative. * * * Pure legislative power, which can never be delegated, is the authority to make a complete law—complete as to the time it shall take effect and as to whom it shall apply—and to determine the expediency of its enactment. Although discretion to determine when and upon whom a law shall take effect may not be delegated, the legislature may confer upon a board or commission a discretionary power to ascertain, *under and pursuant to the law,* some fact or circumstance upon which the law by its own terms makes, or intends to make, its own action depend. The power to ascertain facts, which automatically brings

---

[3] Defendant frequently referred to the cost of enclosing the stairway in his building and, while not articulating it as such, may have sought to raise a substantive due process argument. This court in Lee v. Delmont, 228 Minn. 101, 112, 36 N. W. 2d 530, 538 (1949), discussed this question: "Persons, and their rights of liberty and property, are subject to the restraints and burdens which the legislature imposes upon them for the common good, and, although the exercise of a police power may inconvenience an individual or group and may curtail the use, or depreciate the value of property, if the measure reasonably tends to accomplish the purpose of its enactment without unreasonably or arbitrarily exceeding the needs of the occasion, it is a valid exercise of the police power."

a law into operation by virtue of its own terms, is not the power to pass, modify, or annul a law. If the law furnishes a reasonably clear policy or standard of action which controls and guides the administrative officers in ascertaining the operative facts to which the law applies, so that the law takes effect upon these facts by virtue of its own terms, and not according to the whim or caprice of the administrative officers, the discretionary power delegated to the board or commission is not legislative. * * * Legislation must often be adapted to complex conditions involving a host of details with which the legislature cannot deal directly. * * *

*    *    *    *    *

"The policy of the law and the standard of action to guide the administrative agencies may be laid down in very broad and general terms. * * * What is a sufficiently definite declaration of policy and standard obviously varies in some degree according to the complexity of the subject to which the law is applicable. The discretionary power to ascertain the operative facts normally carries with it the power to make rules and regulations pursuant to which the power is exercised."[4] 228 Minn. 112, 36 N. W. 2d 538.

The delegation of discretionary power is not necessarily improper. In Anderson v. Commissioner of Highways, 267 Minn. 308, 126 N. W. 2d 778 (1964), this court noted that the power of discretion need not always be accompanied by precise rules of action.

"* * * The modern tendency is to be more liberal in permitting grants of discretion to administrative officers in order to facilitate the administration of laws as the complexity of economic and governmental conditions increase. The rule which requires an expressed standard to guide the exercise of discretion is subject to the exception that where it is impracticable to lay down a definite comprehensive rule—such as, where the adminis-

---

[4] Citations omitted.

tration turns upon questions of qualifications of personal fitness, or where the act relates to the administration of a police regulation which is necessary to protect the general health, welfare, and safety of the public—it is not essential that a specific prescribed standard be expressly stated in the legislation. This is so because it is impossible for the legislature to deal directly with the many details in the varied and complex conditions on which it legislates, but must necessarily leave them to the reasonable discretion of administrative officers." 267 Minn. 311, 126 N. W. 2d 780.

We are of the opinion that the city's fire prevention code is well within the permissible bounds of the delegation of discretionary power as previously expressed in our opinions.

Affirmed.