**STATE of Minnesota, Appellant,**

v.

**Cleora Olive KING, a.k.a. Tina King, Respondent.**

No. 46842.

Supreme Court of Minnesota.

Aug. 12, 1977.

694

Warren Spannaus, Atty. Gen., St. Paul, William Randall, County Atty., Steven C. DeCoster, Asst. County Atty., for appellant.

William E. Falvey, Ramsey County Public Defender, and Suzanne E. Flinsch, Asst. Public Defender, St. Paul, for respondent.

Heard before ROGOSHESKE, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The state appeals from an order dismissing a complaint charging defendant on April 21, 1976, with the unlawful possession of phentermine, an alleged Schedule IV controlled substance not expressly listed as such in Minn. St. 1974, § 152.02, subd. 5. Prior to the charge against defendant, the State Board of Pharmacy (board) had designated phentermine a controlled substance by its legislatively delegated authority contained in Minn. St. 152.02, subds. 8 and 12. The principal questions raised are whether the legislature intended by § 152.02, subds. 8 and 12, to give the board rulemaking authority to determine what narcotic substances should be controlled, and whether such delegation is an unconstitutional abdication of legislative power.

On July 6, 1973, phentermine was designated a Schedule IV drug under Federal law by the Bureau of Narcotics and Dangerous Drugs. 38 Fed.Reg. 18014. Thereafter, the board, acting pursuant to § 152.-02, subds. 8 and 12, held a public hearing to consider the inclusion of phentermine as a Schedule IV drug under our statute. In adherence to statutory standards and in compliance with the rulemaking procedures of the Administrative Procedure Act, Minn. St. 1974, § 15.0412, Revised Pharmacy Regulation 51 was filed with the secretary of state and the commissioner of administration on November 8, 1974. Included in this regulation was the designation of phentermine as a controlled substance. It was not, however, until after defendant had been charged that the legislature amended Minn. St. 1974, § 152.02, subd. 5, to expressly include phentermine as a Schedule IV drug. L. 1976, c. 338, § 4.

On May 4, 1976, the trial court granted defendant's motion to dismiss on the ground that the possession of phentermine did not constitute a crime. The court found that the legislature had neither the intent nor the constitutional power to delegate to the board the final rulemaking authority to add controlled substances to the statutory schedules. Rather, the court reasoned that § 152.02, subd. 13, empowered the board only to make annual recommendations to the legislature for amending the statutory schedules. We are persuaded that the trial court erroneously interpreted the pertinent provisions of our statutes for the control of prohibited drugs under chapter 152 and therefore are compelled to reverse.

In 1971, Minnesota adopted in large part the Uniform Controlled Substances Act. L. 1971, c. 937. One of the major purposes of this act was "to achieve uniformity between the laws of the several States and those of the Federal government." 9 U.L.A. 146. This act, closely patterned after the Federal narcotic and dangerous drug law, 21 U.S.

C.A. § 801, et seq., has now been adopted by 43 states. 11 M.S.A. 1977 Cumulative Annual Pocket Part, p. 162.

As originally enacted, Minn. St. 1971, § 152.02, subds. 1 to 6, established five schedules that categorized specific controlled substances according to their pharmacological effect. Subdivision 8 empowered the board to determine what substances should be added or deleted from these schedules in the future and enumerated the factors the board was required to consider in making its determination. Subdivision 12 instructed the board to conform to the rulemaking provisions contained in the Administrative Procedure Act, § 15.-0412, subd. 4, which required any changes in the schedules to be preceded by notice and an opportunity for interested persons to be heard. To assist the board in scheduling controlled substances, subd. 11 provided for the creation of an advisory council. Both the board and the advisory council were required by subd. 13 to make annual recommendations to the legislature concerning amendments to chapter 152.

In 1973, the legislature amended Minn. St. 1971, § 152.02, subd. 12, by inserting the following paragraph (L. 1973, c. 693, § 3):

"If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the state board of pharmacy, the state board of pharmacy shall similarly control the substance under [Laws 1973, chapter 693] after the expiration of 30 days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance. Such order shall be filed pursuant to Minnesota Statutes, Section 15.-0413. If within that 30 day period, the state board of pharmacy objects to inclusion, rescheduling, or deletion, it shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the state board of pharmacy shall publish its decision, which shall be subject to the provisions of Minnesota Statutes 1971, Chapter 15."

The manifest purpose of this amendment was to promote greater uniformity between the drug control regulation of this state and that of the Federal government.[1]

We consider initially the question of whether the rulemaking provisions for designating controlled substances contained in § 152.02, subds. 8 and 12, as amended, can be reconciled with the language found in subd. 13, which arguably empowers the board and advisory council only to make recommendations for legislative amendments. Contrary to the finding of the trial court, we hold that the legislature intended by subds. 8 and 12 to delegate rulemaking authority to the board to revise the statutory schedules enumerating controlled substances. Had the legislature intended otherwise, there would have been no need to direct the board to undergo the elaborate rulemaking provisions contained in the Administrative Procedure Act. Moreover, subds. 12 and 13 are dissimilar in construction. While subd. 12 speaks in terms of the authority of the board alone, subd. 13 treats both the board and the advisory council as legislative advisors. We believe that subd. 13 was meant to affect only those matters relating to drug control generally and was

---

1. This amendment closely paralleled § 201(d) of the Uniform Controlled Substances Act, which provides: "If any substance is designated, rescheduled, or deleted as a controlled substance under Federal law and notice thereof is given to the [appropriate person or agency] the [appropriate person or agency] shall similarly control the substance under this Act after the expiration of 30 days from publication in the Federal Register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that 30 day period, the [appropriate person or agency] objects to inclusion, rescheduling, or deletion. In that case, the [appropriate person or agency] shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the [appropriate person or agency] shall publish his [its] decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling, or deletion under this Act by the [appropriate person or agency], control under this Act is stayed until the [appropriate person or agency] publishes his [its] decision."

not intended to have any bearing on the rescheduling of drugs.[2] Lastly, the mere fact that the legislature may periodically revise the specific listings of controlled substances in § 152.02, subds. 2 to 6, as was done by L. 1976, c. 338, § 4, to include phentermine as a Schedule IV drug is not an indication that the legislature intended to limit the rulemaking authority of the board.

 We also reject the trial court's finding that the legislature is prevented from delegating its power to schedule narcotic substances by Minn. Const. art. 3, § 1. While the legislature may not delegate the authority to make a complete law, it may constitutionally authorize an administrative body to determine those facts that will make a statute effective. As was stated in *Lee v. Delmont*, 228 Minn. 101, 113, 36 N.W.2d 530, 538 (1949):

"* * * The power to ascertain facts, which automatically brings a law into operation by virtue of its own terms, is not the power to pass, modify, or annul a law. If the law furnishes a reasonably clear policy or standard of action which controls and guides the administrative officers in ascertaining the operative facts to which the law applies, * * * the discretionary power delegated to the board or commission is not legislative."

We have further chosen to view legislative delegations liberally in order to facilitate the administration of laws which, like drug control, are complex in their application. *City of Minneapolis v. Krebes*, 303 Minn. 219, 226 N.W.2d 617 (1975); *Anderson v. Commissioner of Highways,* 267 Minn. 308, 126 N.W.2d 778, 9 A.L.R.3d 746 (1964).

 Viewing § 152.02 in its entirety, we are convinced that the legislature has not, by subds. 8 and 12, unconstitutionally relinquished its exclusive lawmaking power to

the board. As a matter of public policy, the legislature has determined that it is unlawful to possess drugs that produce certain deleterious effects and that lead to psychic and physiological dependence, and has articulated, by subd. 7, the broad parameters to be used in categorizing these substances in the various schedules. Subdivision 8 more specifically sets the standards the board is to consider:

"* * * The actual or relative potential for abuse, the scientific evidence of its pharmacological effect, if known, the state of current scientific knowledge regarding the substance, the history and current pattern of abuse, the scope, duration, and significance of abuse, the risk to public health, the potential of the substance to produce psychic or physiological dependence liability, and whether the substance is an immediate precursor of a substance already controlled under this section. * * *"

Many of these factors require precisely that type of expert analysis that an administrative board composed mainly of pharmacists is best able to provide. Since the board has only been employed to ascertain those facts or circumstances that will make § 152.02 operational, we hold that the statute does not sanction a delegation of pure legislative power.[3]

 Finally, on this record, defendant cannot be heard to complain that she was without notice that the possession of phentermine was a crime. It is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse. *State v. Armington,* 25 Minn. 29 (1878); and 4 W. Blackstone, Commentaries (Jones ed.) *27. All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual

---

2. The 1973 amendment to § 152.15, subd. 1, which decriminalized the possession of a small amount of marijuana, is an example of that type of broad policy legislation that the recommendations required by subd. 13 were designed to implement. L. 1973, c. 693, § 11.

3. For cases from other states that have upheld the constitutionality of similar delegations in drug control statutes patterned after the Uniform Controlled Substances Act, see *Cassell v. State,* 55 Ala.App. 502, 317 So.2d 348 (1975); *State v. Lisk,* 21 N.C.App. 474, 204 S.E.2d 868 (1974); *Hilton v. State,* 503 S.W.2d 951 (Tenn. 1973).

activities. While it is true that phentermine was not specifically listed in Minn. St. 1974, § 152.02, subd. 5, at the time defendant was charged, it was legally included as a controlled substance in strict compliance with statutory requirements. Moreover, it had been designated as a controlled substance in the Federal Register for over 2 years prior to the alleged offense. Had defendant made any effort to ascertain whether her possession of this drug without a medical prescription was lawful, she, as any other member of the public, would have been directed to the Federal Register and the delegation provisions here considered, and she would have been put on adequate notice.[4]

Reversed.

OTIS, Justice (dissenting).

Because, in my opinion, the respondent King was unconstitutionally denied adequate notice that possession of phentermine was a crime on April 21, 1976, I would affirm the decision of the trial court.

Pursuant to Minn. St. 152.02, subds. 8 and 12, on November 8, 1974, the State Board of Pharmacy filed with the secretary of state and the commissioner of administration a regulation whereby phentermine was included as a Schedule IV controlled substance. Under Minn. St. 152.09, subd. 1(2), and Minn. St. 152.15, subd. 1(3), possession of phentermine thereby became a crime punishable by a maximum of 3 years' imprisonment and a $10,000 fine. In my opinion, such notice was no notice at all in practical effect.[1]

To apply the doctrine that everyone is presumed to have knowledge of the law would have thoroughly misled this defendant had she looked for guidelines in our statutes. On the day before defendant was charged with having possession of phentermine, the legislature adopted an amendment to chapter 152 expressly including phentermine as a controlled substance but deferring the effective date of that amendment until August 1, 1976, pursuant to Minn. St. 645.02. In my opinion, it is totally unrealistic to expect a layman to prowl through the office of the secretary of state and commissioner of administration in search of a regulation when the statute which was on the books at the time of the alleged offense by its terms included the controlled substance for the first time, and deferred its effective date for more than 3 months from the time the offense was claimed to have occurred.

In *Cassell v. State*, 55 Ala.App. 502, 317 So.2d 348 (1975), cited by the majority, the Alabama court noted that under its controlled substance law, when a prohibited drug was included by the State Board of Health, that regulation was, as required by statute, published in one or more newspapers of general circulation in the state. In the instant case, had the regulation adopted by the State Board of Pharmacy on November 8, 1974, been published in our metropolitan papers, a better case could be made for meeting the requirement of constitutionally mandated public notice.

But, in my opinion, to hold that filing of the regulation with the secretary of state and with the commissioner of administration constitutes notice which satisfies due process where the authorized maximum penalties are imprisonment for 3 years and a $10,000 fine is unreasonable, illogical, and unconscionable. Accordingly, I would affirm the trial court's order of dismissal.

---

4. The district court file reveals that defendant's possession of phentermine was discovered concealed in a small foil package in her undergarments during a search of her person while she was confined in the county jail pursuant to a 10-day sentence for soliciting.

1. Compliance with the Administrative Procedure Act prescribed by Minn. St. 152.02, subd. 12, did not at the time of this alleged offense require that the regulation be published in the State Register since that amendment to Minn. St. 1974, § 15.0412, subd. 2, was not effective until July 1, 1976. L. 1975, c. 380, § 2.