STATE of Minnesota, Respondent,

v.

Thomas Wayne CALMES,
Petitioner, Appellant.

No. CX–00–1273.

Supreme Court of Minnesota.

Aug. 23, 2001.

John M. Stuart, State Public Defender, Sharon E. Jacks, Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, Michelle E. Moren, Roseau County Attorney, Roseau, for respondent.

## OPINION

PAGE, Justice.

On February 13, 1997, pursuant to a plea agreement, appellant Thomas Calmes pleaded guilty to second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(d) (2000), and first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(c) (2000). In return, the state agreed that Calmes would receive the presumptive sentence under the

sentencing guidelines, which the parties believed would be an executed 57–month prison term. At his sentencing hearing on March 17, 1997, Calmes was sentenced to an executed 57–month term on the burglary charge and a concurrent 48–month term on the criminal sexual conduct charge. Although Calmes' criminal sexual conduct conviction required that his sentence include a 5–year conditional release term, see Minn.Stat. § 609.346, subd. 5(a) (1996),[1] there is no record of any discussion of a conditional release term as part of the plea negotiations or at either the plea or sentencing hearings. No conditional release term was imposed by the sentencing court at that time.

Approximately 2 weeks after sentencing, the Department of Corrections requested clarification from the sentencing court as to whether the court intended to include a conditional release term as part of Calmes' sentence. In a letter dated April 10, 1997, the court responded that it intended to apply a 5–year conditional release term. The Department of Corrections subsequently changed Calmes' sentencing record to include the term.

Calmes immediately brought a motion to have the conditional release term removed from his sentence. The state did not oppose this motion and on July 30, 1997, the sentencing court vacated Calmes' 5–year conditional release term.

We subsequently held in State v. Humes, 581 N.W.2d 317, 319–20 (Minn. 1998), and State v. Garcia, 582 N.W.2d 879, 881 (Minn.1998), that the imposition of a conditional release term for certain criminal sexual conduct convictions, including the conviction at issue in this case, is mandatory and nonwaivable. See also State v. Jumping Eagle, 620 N.W.2d 42, 44 (Minn. 2000); State v. Brown, 606 N.W.2d 670, 674 (Minn.2000).

On November 22, 1999, Calmes was released from prison and placed on supervised release.[2] On May 5, 2000, during the period of supervised release and without notice or a hearing, the sentencing court reimposed the 5–year conditional release term through an amended sentencing order. On appeal, citing Humes and United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the court of appeals rejected Calmes' double jeopardy claim. State v. Calmes, 620 N.W.2d 61, 63–64 (Minn.App.2000). Relying on Humes and Garcia, the court concluded that Calmes was not denied due process because, like the defendants in those cases, he had no crystallized expectation of finali-

---

1. Section 609.346, subdivision 5(a), provided, in relevant part:

   [W]hen a court sentences a person to prison for a violation of section * * * 609.343 * * * the court shall provide that after the person has completed the sentence imposed, the commissioner of corrections shall place the person on conditional release. If the person was convicted for a violation of section * * * 609.343 * * * the person shall be placed on conditional release for five years, minus the time the person served on supervised release.

   In 1998, this section was repealed and reenacted as Minn.Stat. § 609.109, subd. 7 (2000). Act of April 6, ch. 367, art. 6, § 6, 1998 Minn. Laws 731, 795.

2. A term of imprisonment is presumptively equal to two-thirds of the executed sentence, with the remaining time to be served as supervised release. Minn.Stat. §§ 244.04, subd. 1, 244.05, subd. 1b(a) (2000). Violating a condition of supervised release may result in reincarceration. Minn.Stat. § 244.05, subd. 3 (2000). Conditional release "is a term of probation * * * imposed upon [a] sex offender after he or she has completed his or her sentence." Humes, 581 N.W.2d at 319 n. 2. As with supervised release, a sex offender who violates any condition of release may be reincarcerated for the remainder of the conditional release term. Minn.Stat. § 609.109, subd. 7(b) (2000).

ty in his original sentence. *Id.* at 64–65. Although not raised by Calmes in his appeal to the court of appeals, the court further concluded that it is not necessary to hold a hearing "each time a sentence is modified only to conform to statutory mandate." *Id.* at 65. In his appeal to this court, Calmes raises the same constitutional claims that he raised below and, in addition, challenges the court of appeals' ruling that he was not entitled to a hearing before his sentence was revised.

## I.

■ We first consider Calmes' due process claim. The United States and Minnesota Constitutions, through their due process clauses, "ensure that sentencing proceedings observe the standards of fundamental fairness essential to justice." *Humes*, 581 N.W.2d at 320. We acknowledged in *Humes* that other courts have recognized that due process concerns are implicated when a defendant's sentence is corrected. *Id.* at 321. We cited *United States v. Lundien*, 769 F.2d 981, 985–87 (4th Cir.1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986), and *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.1978), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978), for the proposition that due process may be violated when a defendant's sentence is enhanced after the defendant has developed a crystallized expectation of finality in the earlier sentence. *Humes*, 581 N.W.2d at 321 n. 22.

As in this case, the defendant in *Humes* challenged a district court's correction of his sentence for a criminal sexual conduct conviction by adding a conditional release term. *Id.* at 318. At the sentencing hearing, the court stayed Humes' 34-month sentence and imposed probation for 5 years. The conditional release term required by statute was not included as part of the sentence. After Humes violated his probation, Humes' sentence was executed. Thirty-two months after Humes was originally sentenced, the sentencing court corrected his sentence by adding the conditional release term. On appeal, we concluded that under the facts Humes did not have a crystallized expectation of finality in his sentence and therefore his due process rights were not violated. *Id.* at 321.

In *Garcia*, the sentencing court also failed to include the conditional release term at the time of sentencing. 582 N.W.2d at 880–81. Twenty months after Garcia was originally sentenced, the sentencing court corrected the sentence by adding the conditional release term. On appeal, we concluded that "Garcia had not developed a crystallized expectation of finality in his sentence such that double jeopardy or due process concerns would arise," and affirmed the sentencing court's correction of his sentence. *Id.* at 881.

We did not state definitively in *Humes* or later in *Garcia* that we recognize due process limits on a court's ability to modify a sentence or a test for determining whether a defendant had a crystallized expectation of finality in the sentence. Therefore, we take this opportunity to explain that we recognize a due process limitation on a court's ability to modify a sentence, and evaluate whether the modification of Calmes' sentence violated due process.

In *Breest*, the defendant was sentenced to life imprisonment. 579 F.2d at 97. Approximately 2 weeks after sentencing, the lower court held a hearing and certified the defendant's crime as "psychosexual in nature" under New Hampshire law. *Id.* The certification meant that the defendant would have to serve 40 years before becoming eligible for parole, a restriction not inherent in the original sentence. The

defendant challenged the amendment to the sentence on double jeopardy grounds. The First Circuit rejected that claim, but in doing so stated:

> [W]e note our concern that the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit. When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope. As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance. The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain. After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set. We need not decide, however, how long or under what circumstances the state or a sentencing court constitutionally can wait to enhance an invalid sentence. The short period of time involved here clearly was permissible.

*Id.* at 101.

In *Lundien,* the defendant was originally sentenced to two concurrent 10–year sentences. 769 F.2d at 982. Five days later, the district court increased the sentence to 20 years, explaining that it had meant the 10–year terms to run consecutively. In examining a due process challenge, the Fourth Circuit noted that due process can be denied if an amendment to a sentence is made out of vindictiveness or other improper motive of the trial court, or when a sentence is "enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized." *Id.* at 987. The court in *Lundien* found no indication of an improper motive and, because Lundien had served only 5 days of a 10–year sentence, his expectations of finality in his sentence had not crystallized.

Therefore, in both *Breest* and *Lundien,* the First and Fourth Circuits recognized a due process limit on a court's ability to modify a sentence once the defendant has begun serving it, but found that the facts in each case did not indicate a due process violation. In *DeWitt v. Ventetoulo,* the First Circuit again addressed a due process challenge to a modified sentence. 6 F.3d 32 (1st Cir.1993), *cert. denied,* 511 U.S. 1032, 114 S.Ct. 1542, 128 L.Ed.2d 193 (1994). DeWitt was given a life sentence, which, under Rhode Island law, meant that he was not eligible for parole for at least 10 years. In 1981, 3 years into his sentence, DeWitt came to the aid of a prison guard being assaulted by an inmate, and later testified at the trial. In recognition of DeWitt's efforts, the superior court held a hearing and entered an order suspending all but 15 years of DeWitt's life sentence, shortening the minimum period before which he could seek parole. In January 1987, DeWitt was released from prison on parole. He began a painting and siding business and resumed his relationships with family members and his girlfriend. *Id.* at 33.

Eight months after his release, DeWitt was in an altercation with a former landlord in which the landlord and his wife were injured. Instead of seeking revocation of DeWitt's parole, the state asked the superior court to vacate its 1981 order suspending in part DeWitt's original life sentence. The court granted the motion

and DeWitt was reincarcerated under his life sentence.[3] DeWitt's petition for habeas corpus, claiming a due process violation, was granted by the district court. On appeal, the First Circuit stated:

> We are concerned here not with the substantive grounds of a state's decision to reduce or increase a sentence, but rather with the inherently procedural issue of whether and when a state can reopen a matter after a final unappealed decision, after a substantial lapse in time during which the state had actual knowledge of the error, and after a significant change in circumstances.

*Id.* at 34. The court acknowledged that a defendant does not automatically acquire a vested interest in an erroneous sentence, and that only in an "extreme case" will a revision be so unfair that it amounts to a violation of due process. *Id.* at 35. The court rejected any single test for a due process violation, but considered the lapse of time between the original mistaken sentence and the attempted increase, whether the defendant contributed to the mistake, the reasonableness of the defendant's expectations, the prejudice of the sentencing change to the defendant, and the diligence exercised by the state in seeking the change. The court noted that the lengthy delay in the correction of the sentence and DeWitt's changed circumstances were not decisive, but were relevant to whether due process was violated. The court also noted that the state appeared to have sought to correct the sentence to avoid the due process obligations that attach to parole revocations. The court concluded that the various considerations weighed in favor of finding a "very rare exception to the general rule that courts can, after sentence, revise sentences upward to correct er-

rors." *Id.* at 36. The court therefore held that the resentencing violated due process.

■ Consistent with this authority, we recognize there are due process limits on a court's ability to modify a sentence to correct an error. However, we agree with the First Circuit in *DeWitt* that such cases will be rare. We also find the considerations the court used in *DeWitt* helpful to our analysis of Calmes' due process claim without establishing any sort of formula for a due process violation.

■ We consider first the length of the delay in correcting the sentence. Calmes argues that his case is distinguishable from both *Humes* and *Garcia* because the time period between his original sentencing date and the date of the amended sentencing order—37 months—is greater than the time period involved in either *Humes* (32 months) or *Garcia* (20 months). Although Calmes' sentence was corrected 37 months after his original sentencing, we do not view the 5–month difference between the correction of Humes' sentence after 32 months and Calmes' sentence after 37 months, standing alone, as significant in establishing a due process violation.

■ Passage of time is not the only consideration of whether a correction of a sentence violates due process. Calmes also argues that, unlike the defendants in *Humes* and *Garcia,* intervening circumstances gave him reason to believe that he would not be subject to a conditional release term. Specifically, Calmes notes that the sentencing court had vacated the previously imposed conditional release term almost 3 years before his sentence was amended, and that he had been released from prison over 5 months before the amendment. In this respect, he is

---

**3.** DeWitt was subsequently acquitted of charges related to the assault on the landlord.

6 F.3d at 34.

perhaps more like DeWitt, who had been released from the institution. Calmes argues that, because of these circumstances, he suffered prejudice in the form of "dashed expectation[s] and hope[s] regarding the sentence he was serving." Finally, he claims that "the state did absolutely nothing to dispel [his] expectation."

■ While Calmes' conditional release term, first imposed, was vacated on July 30, 1997, we do not see that fact as determinative of a due process violation. At the time conditional release was removed from his sentence, Calmes was on notice that a statute required that he serve a conditional release term. Moreover, because citizens are presumed to know the law, *State v. King,* 257 N.W.2d 693, 697–98 (Minn.1977), once this court issued its decisions in *Humes* and *Garcia* holding that the conditional release term required by section 609.346, subdivision 5(a), was mandatory and nonwaivable, Calmes could not have developed a reasonable crystallized expectation of finality in a sentence that did not include a mandatory and nonwaivable condition.[4] Thus, although the court had previously removed the conditional release term, *Humes* and *Garcia* demonstrated that the term was subject to reinstatement upon appeal or at the request of the Commissioner of Corrections.

Calmes also argues that his expectation had become crystallized because he had been released for over 5 months when the amended sentencing order was issued.

Calmes was on supervised released at that time, however. Supervised release imposes on an offender a series of restrictions that should have made clear to Calmes that he remained in the custody of the commissioner despite being out of the institution. *See* Minn. R. 2940.2000 (1999) (imposing reporting and contact requirements and restrictions on use of intoxicants, possession of firearms, and departure from state on those on supervised release); Minn. R. 2940.2100 (1999) (authorizing commissioner of corrections to impose special conditions of release regarding contact with specified persons, travel, treatment programs, etc.). These restrictions on Calmes' freedom should have imparted to him that his sentence was in no way complete. As the court in *DeWitt* noted, the change of circumstances resulting from release from the institution is not determinative of a due process violation. 6 F.3d at 35.

While there are similarities between Calmes and DeWitt in this regard, a significant distinction between *DeWitt* and this case is the court's finding in *DeWitt* that the state appears to have singled out DeWitt for correction of his sentence, and did so to avoid a parole revocation hearing. *Id.* In contrast, it does not appear that Calmes has been singled out for imposition of the conditional release term. *See Jumping Eagle,* 620 N.W.2d 42; *Brown,* 606 N.W.2d 670; *Garcia,* 582 N.W.2d 879; *Humes,* 581 N.W.2d 317. The court in *DeWitt* noted that the cases in which relief

---

**4.** We do not suggest that a presumed or actual knowledge of the law will always defeat an expectation of finality in an illegal sentence. Rather, the facts in this case illustrate a particularly clear signal to Calmes that under Minnesota law his offense required imposition of a term of conditional release. He was actually aware of the statute, and presumptively aware of the holdings in *Humes* and *Garcia* that conditional release was mandatory and nonwaivable. Moreover, the state's

initial failure to object to removal of the conditional release term predated *Humes* and *Garcia.* While in another case presumed knowledge of the illegality of a sentence may not be as significant a factor, the particular clarity of the application of conditional release to Calmes' conviction, combined with the procedural history including our decisions in *Humes* and *Garcia,* combine to defeat an expectation of finality in this case.

based on due process is denied were distinguishable in that the defendant was still in prison, the lapse of time between the original sentence and its correction was not significant, or the defendant almost certainly knew or should have known that an error in sentencing had been made. 6 F.3d at 36. In this case, Calmes was still subject to supervised release at the time of correction of the sentence, and knew or should have known that a mandatory and nonwaivable aspect of his sentence had been omitted.

While the court's action undoubtedly dashed Calmes' hopes regarding his sentence, any expectation regarding the finality of his sentence was not reasonable in light of his status on supervised release, the clear mandate of the conditional release law, and this court's rulings in *Humes* and *Garcia*. We conclude that modification of Calmes' sentence to include the conditional release term did not violate his due process rights.

## II.

█ We next address Calmes' claim that the United States and Minnesota constitutional guarantees against double jeopardy were violated when the district court amended his sentence to include the conditional release term. The double jeopardy clauses of both constitutions [5] protect criminal defendants from "three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Humes*, 581 N.W.2d at 320. Here, our only concern is with multiple punishments for the same offense, which Calmes claims results from the correction

of a sentence to include a conditional release term.

█ We stated in *Humes* that "[t]he double jeopardy guarantees are generally not violated when a district court corrects an unauthorized sentence, even if the sentence is increased. This is because 'a sentence does not have the qualities of constitutional finality that attend an acquittal.'" *Id.* (quoting *DiFrancesco*, 449 U.S. at 134), 101 S.Ct. 426 (footnote omitted). Moreover, Calmes' revised sentence does not impose multiple punishments, but simply the single punishment that was mandatory at the time of sentencing. Therefore, the correction of his sentence does not violate double jeopardy.

## III.

█ Finally, we consider whether due process or the Minnesota Rules of Criminal Procedure afforded Calmes the right to a hearing before his sentence was corrected to include the conditional release term. Calmes cites *State ex rel. Shetsky v. Utecht*, 228 Minn. 44, 54, 36 N.W.2d 126, 131 (1949), in support of his claim that the imposition of a sentence, even in the defendant's voluntary absence, is unlawful and violates due process.

In *Utecht*, the court stated its agreement with the view, expressed in the American Law Institute (ALI) Code, that "the imposition of a sentence of *death or imprisonment* in the absence of the defendant is illegal." *Utecht*, 228 Minn. at 51, 36 N.W.2d at 130 (emphasis added). Thus, *Utecht* does not stand for the proposition that the imposition of *any* sentence requires the defendant's presence, only sentences to imprisonment or death.

**5.** The federal constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Minnesota Constitution provides: "[N]o person shall be put twice in jeopardy of punishment for the same offense * * *." Minn. Const. art. I, § 7.

Here, Calmes' sentence was corrected by the addition of a statutorily mandated conditional release term, but no sentence of actual imprisonment was imposed. The provision of the ALI Code relied on by the court in *Utecht* provided that "[t]he defendant need not be present when a sentence of a fine only, or a fine and imprisonment until the fine is paid, is pronounced." *Id.* at 51 n. 5, 36 N.W.2d at 130 n. 4 (citation omitted). Thus, under the ALI Code, a defendant need not always be present when a judge imposes a sentence.

Calmes also relies on Minn. R.Crim. P. 27.03, subd. 2, which provides that a "[d]efendant must be personally present at the sentencing hearing and at the time sentence is pronounced." However, the organization of Rule 27.03 demonstrates that subdivision 2 of that rule deals only with the *original* sentencing hearing, and not modifications to a sentence. The subdivisions of Rule 27.03 correspond to the chronological order in which a sentence is imposed and implemented. *See, e.g.,* Minn. R.Crim. P. 27.03, subds. 1 ("Hearings"), 4 ("Imposition of Sentence"), 7 ("Judgment"), 9 ("Correction or Reduction of Sentence"). Subdivision 9 specifically provides that "[t]he court *at any time* may correct a sentence not authorized by law." Minn. R.Crim. P. 27.03, subd. 9 (emphasis added). Therefore, the rule does not by its terms prohibit the court from correcting a sentence in the absence of the defendant.

However, the mere possibility of imprisonment inherent in the imposition of conditional release is admittedly more sig-

nificant than a fine, imposition of which, we suggested in *Utecht,* did not require the defendant's presence. 228 Minn. at 51, n. 5, 36 N.W.2d at 130 n. 4. Ultimately, we leave the determination of whether a defendant should have a hearing on the imposition of conditional release to correct a sentence to the discretion of the sentencing court.[6] When there are questions about, for example, the validity of a plea agreement in light of the correction, or the length of the conditional release term, a hearing may be appropriate. *See, e.g., Jumping Eagle*, 620 N.W.2d at 44. In this case, Calmes does not allege any facts that suggest he is not required to serve a term of conditional release. His offense of conviction clearly required imposition of a conditional release term. Minn.Stat. § 609.346, subd. 5(a) (1996); Minn.Stat. § 609.109, subd. 7. He makes no claim, as in *Jumping Eagle,* that a plea was induced by the promise of a sentence of a specific number of months that did not include conditional release, for which a hearing may be appropriate. *See Jumping Eagle,* 620 N.W.2d at 44.

In sum, we hold that the decision whether to grant a hearing on the imposition of a mandatory and nonwaivable conditional release term to correct an illegal sentence rests within the discretion of the sentencing court. Because Calmes fails to allege any facts to suggest he is not subject to imposition of a conditional release term, a hearing at which he was entitled to be present was not required in order for the court to correct his sentence.

---

**6.** Our concern that a defendant have an opportunity to be heard regarding the imposition of conditional release is allayed by the defendant's right to a hearing when release is *revoked* and the offender is reincarcerated. *See* Minn. R. 2940.3500, 2940.4200, and 2940.4300. In addition, as we acknowledged recently in *State v. Schwartz,* an offender may obtain judicial review of the commissioner's decision to revoke conditional release through postconviction procedures. 628 N.W.2d 134, 141 n. 3 (Minn.2001); Minn.Stat. § 590.01 (2000). A postconviction hearing is required unless the petition and files and records conclusively show that the petitioner is entitled to no relief. Minn.Stat. § 590.04 (2000).

For the foregoing reasons, we conclude that the correction of Calmes' sentence without a hearing did not violate due process, double jeopardy, or our rules of criminal procedure.

Affirmed.

PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent. This case arises from the Roseau County District Court's sua sponte reimposition of a conditional release term on appellant Thomas Calmes' criminal sentence. The imposition of the conditional release term was upheld by the Minnesota Court of Appeals. The majority concludes that Calmes did not develop a crystallized expectation of finality in his earlier sentence and thus due process was not violated by the imposition of the statutorily mandated conditional release term. I agree with the majority that there is a due process limit to a court's ability to modify a sentence, but conclude that Calmes did develop a reasonable crystallized expectation of finality in his sentence.

In reaching its conclusion that Calmes' due process rights were not violated, the majority relies on the factors outlined in *DeWitt v. Ventetoulo,* 6 F.3d 32 (1st Cir. 1993), and the fact that Calmes' claim is not distinguishable from the due process challenges we addressed in *State v. Humes,* 581 N.W.2d 317 (Minn.1998), and *State v. Garcia,* 582 N.W.2d 879 (Minn. 1998). However, in reaching this conclusion, the majority disregards the fact that the state originally informed the court that Calmes was correct that the conditional release term *should not* be applied to his sentence.

Calmes was originally sentenced on March 17, 1997, and his sentence did not include the statutorily mandated conditional release period. On April 10, 1997, the sentencing judge corrected this error and added a 5–year conditional release term to Calmes' sentence. Calmes immediately opposed this addition and filed a motion to have the conditional release provision removed, asserting that "the sentence originally imposed on Mr. Calmes was properly authorized by law and the court did not have the power to increase the sentence by adding a five-year conditional release term."

Contrary to the majority's characterization, the state did more than just "not oppose" Calmes' motion. The Roseau County Attorney responded to Calmes' motion with a letter to the court stating that Calmes' "motion is correct." The court then rescinded the conditional release term on July 30, 1997. We decided *Garcia* and *Humes* on July 9, 1998. Calmes was released from prison on November 22, 1999, and on May 5, 2000, the court sua sponte reimposed the conditional release term on Calmes. However, in its memorandum accompanying its order reimposing the 5–year conditional release term, the court acknowledged that when the sentence was vacated on July 30, 1997, "[t]he defendant, his attorney, the State Public Defender's Office, the Department of Corrections and the County Attorney agreed that the sentence could not be changed * * *."

The majority deems the state's role in Calmes' sentencing irrelevant by asserting that "citizens are presumed to know the law" and that due to our subsequent decisions in *Humes* and *Garcia,* "Calmes could not have developed a reasonable crystallized expectation of finality in a sentence that did not include a mandatory and non-waivable condition." This conclusion by the majority eviscerates any due process challenge based on a crystallized expectation of finality because under the majority's reasoning, a defendant's expectation is

not "reasonable" even though the state and the court both asserted in writing that the conditional release period would not be applicable. Instead, the majority presumes a defendant will continually monitor recent court opinions just in case an appellate court has modified the rules involving the application of sentence terms, thus negating the "finality" of a sentence. And, although the majority presumes this diligence of a defendant, it does not require it of the state, despite the fact that the state should also be presumed to know the law and, under the analysis adopted by the majority and the court in *DeWitt*, the state has some duty to diligently correct a sentencing error.

Accordingly, I conclude that Calmes developed a crystallized expectation of finality in his sentence based on (1) the state's original position that the conditional release term should not be applied to him, (2) the court's order vacating the conditional release term, and (3) the state's failure to diligently correct the sentencing order following our opinions in *Garcia* and *Humes*. I would therefore hold that the conditional release term should be rescinded from Calmes' sentence.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

GILBERT, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.