*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1701**

State of Minnesota,
Respondent,

vs.

Juanel Anthony Mikulak,
Appellant.

**Filed October 11, 2016
Affirmed
Peterson, Judge**

Ramsey County District Court
File No. 65-CR-14-355

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David Torgelson, Renville County Attorney, Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica M. Surges, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Bratvold, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a conviction of failing to register as a predatory offender, appellant argues that the factual basis for his guilty plea is insufficient. We affirm.

# FACTS

Appellant Juanel Anthony Mikulak was required to register as a predatory offender following a fifth-degree criminal-sexual-conduct conviction in 2008. Upon his release from prison, Mikulak registered a primary address in St. Cloud[1] where he and his girlfriend L.M. lived. L.M. asked Mikulak to leave their shared residence, and Mikulak left St. Cloud and went to stay with D.T., who lived in Danube,[2] and he did not register with the local law-enforcement authority.

Mikulak was charged with one count of failing to register as a predatory offender, in violation of Minn. Stat. § 243.166, subd. 5(a) (2014), and he pleaded guilty. Speaking to Mikulak at the plea hearing, the district court summarized the facts as follows:

> Now in your case the allegation is that you no longer had a primary residence because you were kicked out and that's one of the elements of the offense and the other is that when you came to Danube on the dates [that are] talked about in the complaint, you failed within 24 hours to notify the Sheriff that that's where you're at or local law enforcement to satisfy the registration requirement. Is that your understanding of the charge you'd be pleading guilty to?

Mikulak replied, "That's my understanding, yes."

Mikulak testified that he stayed with D.T. beginning on October 17, 2014, and that he stayed for the weekend. Mikulak also testified that he visited the Renville County Sheriff's Department, but he did not fill out any registration paper work because he assumed that he had a week to register. Mikulak acknowledged that the registration

---

[1] This address is in Stearns County.
[2] Danube is in Renville County.

2

information provided to him after his conviction in 2008 stated that, if he did not have a primary address, he must report to the law-enforcement authority in the area where he was staying within 24 hours of leaving his former primary address.

The district court reviewed the forms Mikulak signed in 2008 when he was first required to register. Mikulak acknowledged that he signed the forms setting forth the 24-hour registration requirement and that his understanding that he had seven days to register did not apply to his current situation. Mikulak had forgotten that there was a 24-hour requirement, but he agreed that he was given that information when he first registered.

The district court accepted Mikulak's guilty plea to the charge of failing to register within 24 hours after going to Danube. In accepting the plea, the district court summarized that the failure to register had occurred on October 16 or 17 and for "24 hours thereafter." The court denied Mikulak's motion for a dispositional sentencing departure and sentenced him to 36 months in prison. Mikulak now appeals his conviction, arguing that the district court improperly accepted his guilty plea.

## D E C I S I O N

Before accepting a guilty plea, "the [district] court must determine whether the plea is 'accurate, voluntary and intelligent (i.e., knowingly and understandingly made)', and whether there is an adequate factual basis for the plea on the record." *State v. Lyle*, 409 N.W.2d 549, 551 (Minn. App. 1987) (quoting *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983)). Whether a guilty plea is valid is a question of law, which we review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

3

"A factual basis [for a guilty plea] exists if there are sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Johnson*, 867 N.W.2d 210, 215 (Minn. App. 2015) (quotations omitted), *review denied* (Minn. Sept. 29, 2015). Mikulak was charged with violating Minn. Stat. § 243.166, subd. 5(a), which states that "[a] person required to register under this section who knowingly violates any of its provisions or intentionally provides false information . . . is guilty of a felony." Minn. Stat. § 243.166, subd. 3a(a) (2014), provides that, "[i]f a person leaves a primary address and does not have a new primary address, the person shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours of the time the person no longer has a primary address." Minn. Stat. § 243.166, subd. 3a(c) (2014), requires that "[a] person who lacks a primary address shall register with the law enforcement authority that has jurisdiction in the area where the person is staying within 24 hours after entering the jurisdiction."

Mikulak argues that his guilty plea must be vacated because he testified at the plea hearing that he had not lost his primary residence in Stearns County when he entered Renville County on October 17, 2014, and he did not admit that he was ever in any single jurisdiction for 24 hours. Consequently, Mikulak contends, there was not a factual basis to conclude that he was required to register within 24 hours, and he could not have knowingly violated the registration statute by failing to register. We are not persuaded.

Although Mikulak testified at the plea hearing that, after October 17, he still had personal items at the residence that he had shared with L.M., he also testified that L.M. asked, or told, him to leave the residence, and, on Friday, October 17, he went to Danube to stay with

4

D.T. and spent the weekend there. More importantly, Mikulak testified, "I paid a visit to the [Renville County] Sheriff's Department but I didn't fill out any registration paperwork or anything like that because I was assuming that, I assumed I had a week, I didn't realize I had 24 hours." This testimony demonstrates that Mikulak knew that he no longer had a primary address and that he was required to register in Renville County, but he was mistaken about how quickly he needed to register.

Mikulak argues that, even if he knew that he had lost his primary residence, the record is insufficient to show that he needed to register because he did not admit that he was in the same jurisdiction for at least 24 hours. But Mikulak testified that he arrived in Danube on Friday, and when he was asked how long he stayed there, he answered, "For the weekend, I was visiting."

Mikulak argues that this testimony does not show that he was in the same jurisdiction for 24 hours because he did not define how long "the weekend" was and did not make clear that he stayed in Danube that entire time. But the common meaning of "weekend" is "[t]he last part of the week, typically from Friday evening through Sunday evening, but sometimes including other adjacent days, especially when seen as a time of leisure or recreation." *The American Heritage Dictionary of the English Language* 1964 (5th ed. 2011) There is no reason to conclude that Mikulak meant anything other than this common meaning, and under this meaning, a weekend is more than 24 hours long. Also, Mikulak testified that he stayed with D.T. in Danube, and when the follow-up question asked how long he stayed "there," it is apparent that "there" referred to Danube.

Finally, Mikulak argues that, because he did not know that he needed to register within 24 hours, he did not "knowingly" violate the registration statute. Citing *State v. Watkins*, 840 N.W.2d 21, 31 (Minn. 2013), and *State v. Gunderson*, 812 N.W.2d 156, 160-61 (Minn. App. 2012), Mikulak argues that, to prove a knowing violation of the statute, the state had to show not only that he knew that he was required to register, but that he also knew that his action, or inaction, violated the statute. But in *Watkins*, the defendant was charged with violating a domestic-abuse no-contact order, and he testified that he did not know that he was contacting the protected person named in the order, 840 N.W.2d at 24, and in *Gunderson*, the defendant was charged with violating a harassment restraining order, and he testified that he did not believe that the order prohibited the actions for which he was charged. 812 N.W.2d at 159. Neither defendant argued that the state needed to prove that he knew that a statute prohibited him from violating the order; both argued that the state needed to prove that he knew what the order prohibited.

Unlike the defendants' claims in *Watkins* and *Gunderson*, Mikulak's claim is that he did not know what the registration statute required. But in Minnesota, "[i]t is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse. All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities." *State v. King*, 257 N.W.2d 693, 697-98 (Minn. 1977) (citations omitted).

In *King*, the defendant was charged with unlawful possession of a substance that was not included in a statutory list of controlled substances but had been designated as a controlled substance by the State Board of Pharmacy under authority delegated to the board

6

by the state legislature. *Id.* at 695. The district court granted the defendant's motion to dismiss on the ground that possession of the substance did not constitute a crime. *Id.* The supreme court reversed and explained that the defendant could not "be heard to complain that she was without notice that [possessing the substance] was a crime." *Id.* at 697. The supreme court stated:

> Had defendant made any effort to ascertain whether her possession of this drug without a medical prescription was lawful, she, as any other member of the public, would have been directed to the Federal Register and the delegation provisions here considered, and she would have been put on adequate notice.

*Id.* at 698.

Similarly, had Mikulak made any effort to ascertain when he was required to register, he would have learned that he was required to register within 24 hours after entering Danube. Because Mikulak is presumed to know those laws that are likely to affect his usual activities, the factual basis for his guilty plea did not need to show that he knew that the registration statute required him to register within 24 hours after he entered Danube.

This conclusion is consistent with general principles set forth in the Minnesota Criminal Code of 1963, which is codified as Minn. Stat. §§ 609.01-.912 (2014).[3] The Criminal Code provides that "[w]hen criminal intent is an element of a crime in [the Code], such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase

---

[3] Minn. Stat. § 243.166, subd. 5(a), creates a criminal offense, but it is not part of the Criminal Code.

7

'with intent that,' or some form of the verbs 'know' or 'believe.'" Minn. Stat. § 609.02, subd. 9(1). The registration statute provides that a person "who *knowingly* violates any of its provisions . . . is guilty of a felony." Minn. Stat. § 243.166, subd. 5(a) (emphasis added). Thus, intent is an element of a failing-to-register offense, and the state is required to prove that a defendant knowingly violated the statute.

But under the Criminal Code, "'[k]now' requires only that the actor believes that the specified fact exists." Minn. Stat. § 609.02, subd. 9(2). "Criminal intent does not require proof of knowledge of the existence or constitutionality of the statute under which the actor is prosecuted or the scope or meaning of the terms used in that statute." *Id*, subd. 9(5). Thus, to prove a violation of the registration statute, the state must prove that the defendant believes that the facts that constitute a violation exist, but the state is not required to prove that the defendant knows that the registration statute exists or what the statute means. *See Bryan v. United States*, 524 U.S. 184, 193, 118 S. Ct. 1939, 1946 (1998) (stating that, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense" (footnote omitted)); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(b) (2d ed. 2003) (stating that "to 'knowingly' engage in certain conduct proscribed by a criminal statute does not require that the conduct be done with knowledge of its illegality").

The facts required for Mikulak's alleged violation of the registration statute are that Mikulak no longer had a primary address, he stayed in Danube, and he did not register with the law-enforcement authority that had jurisdiction in Danube within 24 hours after he entered. As we have already discussed, Mikulak's testimony at his plea hearing proved

8

that he believed that these facts existed.  We, therefore, conclude that there is an adequate factual basis for Mikulak's guilty plea on the record.

**Affirmed.**