STATE OF MINNESOTA

IN SUPREME COURT

A23-1524

Court of Appeals                                                                    McKeig, J.

Joel Armen Underwood, III,

      Appellant,

vs.                                                                    Filed: August 27, 2025
                                                                    Office of Appellate Courts
State of Minnesota,

      Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Carl E. Erickson, Kelsey R. Kelley, Assistant Anoka County Attorneys, Anoka, Minnesota, for respondent.

Jeffrey A. Wald, Nelson Mullins Riley & Scarborough, LLP, St. Louis Park, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

_____

S Y L L A B U S

1.     When a district court order accurately informs a defendant of their legal obligations under the then-existing version of Minnesota Statutes section 624.713, subdivision 1(2), which prohibits a person convicted of a crime of violence from possessing firearms or ammunition, and the Legislature later modifies those obligations by amending

1

the statute, the State does not violate a defendant's due process rights by later charging the defendant for a violation of the amended statute.

2.      The crime of ineligible person in possession of a firearm, under Minnesota Statutes section 624.713, subdivision 1(2), does not require the State to prove the defendant's knowledge of their ineligibility status, but rather their previous conviction of a crime of violence, as an element of the offense.

Affirmed.

O P I N I O N

MCKEIG, Justice.

This case presents two issues related to the ineligible person in possession of a firearm statute, Minnesota Statutes section 624.713 (2024). The Minnesota Legislature amended the statute in 2003 to impose a lifetime firearm ban, instead of a 10-year ban, for individuals convicted of a crime of violence. *See* Act of Apr. 28, 2003, ch. 28, art. 3, §§ 8, 10, 2003 Minn. Laws 265, 293–94, 296 (codified as amended at Minn. Stat. § 624.713, subds. 1, 3(a) (2024)). Appellant Joel Underwood, III, was charged in 2021 with violating the statute in its current, amended form, which provides, "[t]he following persons shall not be entitled to possess . . . any . . . firearm: . . . a person who has been convicted of . . . a crime of violence." Minn. Stat. § 624.713, subd. 1(2). Underwood entered a guilty plea and was convicted. Before the court of appeals, Underwood argued that (1) his conviction violates due process because he possessed his firearm in reliance upon his 2000 probation discharge order, which included a then-accurate statement that he was only subject to a 10-year ban on possessing a firearm, and (2) his guilty plea was invalid because in his factual

basis, Underwood did not state that he knew he was ineligible to possess a firearm. The court of appeals determined that Underwood's conviction did not violate his due process rights under the U.S. and Minnesota Constitutions and that his guilty plea was valid. We granted review on both issues. For the reasons stated in this opinion, we affirm the court of appeals' decision.

**FACTS**

In 1998, appellant Joel Underwood, III, pleaded guilty to third-degree assault, a crime of violence. Minn. Stat. § 609.223, subd. 1 (2024); *see* Minn. Stat. § 624.712, subd. 5 (2024) (defining "crime of violence" to include third-degree assault).[1] In 1999, a Dakota County district court convicted Underwood and placed him on probation. In 2000, the district court issued an order discharging Underwood from probation and restoring his civil rights and full citizenship, "with full right to vote and hold office the same as if said conviction had not taken place" (the discharge order). The discharge order stated that Underwood was "not entitled to ship, transport, possess or receive a firearm until 10 years"

---

[1] The Legislature added third-degree assault into the definition of "crime of violence" in 1987. Act of May 28, 1987, ch. 276, § 3, 1987 Minn. Laws 1428, 1428–29 (codified as amended at Minn. Stat. § 624.712, subd. 5). The definition of "crime of violence" has included third-degree assault since that time.

after the discharge order was issued.[2]  This 10-year ban was a correct statement of law at the time the district court issued the order.  *See* Minn. Stat. § 624.713, subd. 1(b) (2000).[3]

In 2003, the Minnesota Legislature amended the statute to impose a lifetime firearm ban, instead of a 10-year ban, for individuals convicted of a crime of violence.  *See* Act of Apr. 28, 2003, ch. 28, art. 3, §§ 8, 10, 2003 Minn. Laws 265, 293–94, 296 (codified as amended at Minn. Stat. § 624.713, subds. 1, 3(a) (2024)).[4]  No government official expressly notified Underwood of the change in law.

Nearly two decades later, on April 30, 2021, officers arrested Underwood at a check cashing business in Anoka County, Minnesota.  Upon arrest, Underwood admitted to having a firearm on his person that he did not have a permit to carry.  Officers retrieved a .32 caliber handgun from Underwood's hip.

---

[2]  In its entirety, the statement in the discharge order was, "You are not entitled to ship, transport, possess or receive a firearm until 10 years have elapsed since you have been restored to civil rights and during that time you are not to have been convicted of any other crime of violence."  It is undisputed that Underwood was not convicted of any other crime of violence during the subsequent 10 years.

[3]  The order discharging a person from probation or from the custody of the Commissioner of Corrections restores that person's civil rights.  Minn. Stat. § 242.31, subds. 1, 2 (2024).  In 2000, when the district court issued its discharge order, Minn. Stat. § 242.31, subd. 2a, stated, "The order of discharge must provide that a person who has been convicted of a crime of violence . . . is not entitled to ship, transport, possess, or receive a firearm until ten years have elapsed since the person was restored to civil rights and during that time the person was not convicted of any other crime of violence."

[4]  Correspondingly, Minnesota Statutes § 242.31, subd. 2a (2024), as amended, states, "The order of discharge must provide that a person who has been convicted of a crime of violence . . . is not entitled to ship, transport, possess, or receive a firearm for the remainder of the person's lifetime."

On May 3, 2021, respondent State of Minnesota charged Underwood with ineligible person in possession of a firearm under Minn. Stat. § 624.713, subd. 1(2);[5] the predicate crime of violence was his 1999 third-degree assault conviction.[6] In December 2022, Underwood waived his right to a jury trial and entered a guilty plea.[7] In providing a factual basis for the plea, he admitted to knowingly possessing a firearm and acknowledged that he had been convicted of a crime of violence. Underwood stated, however, that he did *not* know he was ineligible to possess a firearm:

| | |
|---|---|
| [STATE]: | And you told officers that you had a firearm on your hip; is that right? |
| [UNDERWOOD]: | That's correct. |
| [STATE]: | And when officers looked, you, in fact, did have a Taurus .32 caliber handgun on your hip; is that right? |
| [UNDERWOOD]: | Correct. |
| [STATE]: | All right. Now you are prohibited from possessing a firearm because of a prior felony conviction, a third degree assault, with court file number 19-K1-98-000522; is that right? |
| [UNDERWOOD]: | What year is that? |
| THE COURT: | It's a 1998 case. |
| [STATE]: | Correct. |

---

[5] The State also charged Underwood with offering a forged check, Minn. Stat. § 609.631, subd. 3 (2024), and fifth-degree controlled substance possession, Minn. Stat. § 152.025, subd. 2(1) (2024). These charges are not at issue in this appeal.

[6] About 10 months after Underwood's Anoka County charge, he was charged with the same crime in Scott County. *State v. Underwood*, No. A23-0054, 2024 WL 160061, at *1 (Minn. App. Jan. 16, 2024), *rev. denied* (Minn. Apr. 16, 2024). In April 2022, Underwood pleaded guilty to the Scott County charge, unsuccessfully pursued postconviction relief on the same grounds as this case and lost his appeal in a nonprecedential opinion. *Id.* at *1. We denied review.

[7] In exchange for Underwood's guilty plea, the State agreed to dismiss the remaining counts of the complaint. The agreed upon sentence was 60 months in prison, the mandatory minimum sentence for the offense. *See* Minn. Stat. § 609.11, subd. 5(b) (2024).

| | |
|---|---|
| [UNDERWOOD]: | Correct. |
| [STATE]: | Okay. And so because of that, that case or that conviction, you weren't allowed to possess firearms; is that right? |
| [UNDERWOOD]: | I assume so. |
| [STATE]: | Well, you assume so or - - Well, you knew on that day that you weren't allowed to possess them; is that right? |
| [UNDERWOOD]: | I knew I didn't have a permit to carry, yes, correct. |
| [STATE]: | But you also knew that you were prohibited from possessing them because of that prior conviction; is that right? |
| [UNDERWOOD]: | No, ma'am. I didn't know a felony from 20 years prior would effect – |
| THE COURT: | Hold on, sir. Sir, hold on. |

After Underwood's last statement, defense counsel, the prosecutor, and the court discussed whether Minn. Stat. § 624.713, subd. 1(2), required the State to prove that a defendant knew he was ineligible to possess a firearm. The parties agreed that it was not an element of the offense. The district court found that Underwood's knowing possession of a firearm and his admission of the prior felony conviction established a sufficient factual basis to support his plea to the crime of being an ineligible person in possession of a firearm. The district court accepted Underwood's guilty plea to that offense and sentenced Underwood to 60 months in prison, the statutory mandatory minimum.

On May 12, 2023, Underwood petitioned for postconviction relief. In his petition, Underwood asserted that because the district court's 2000 discharge order stated that he could possess a firearm after 10 years, the State's post-2010 prosecution for unlawful firearm possession violated his due process rights. In the alternative, Underwood argued that his guilty plea was inaccurate because he did not admit that he knew of his ineligibility

6

status, which he contended is an element of the offense. The State opposed Underwood's petition on the grounds that a defendant's ignorance of a change in the law is not a legal defense. The State also argued Underwood's guilty plea was valid because while Minn. Stat. § 624.713, subd. 1(2), requires the State to prove a defendant knowingly possessed a firearm, it does not require that a defendant knew he was prohibited from possessing a firearm. The postconviction court denied Underwood's petition, relying on two prior cases from the court of appeals.[8] Underwood appealed.

The court of appeals unanimously affirmed the district court's denial of his petition for postconviction relief. *Underwood v. State*, 8 N.W.3d 655 (Minn. App. 2024). The court of appeals held that "when a district court's order accurately informs a defendant of their legal obligations under the then-existing version of Minn. Stat. § 624.713, and the legislature later modifies those obligations by amending section 624.713, the state does not violate a defendant's due-process rights by charging them under the amended statute." *Underwood*, 8 N.W.3d at 661. It affirmed the district court's denial of Underwood's

---

[8] The postconviction court concluded that the facts of Underwood's case were distinguishable from a prior court of appeals case vacating a defendant's conviction for ineligible person in possession of a firearm where the district court affirmatively and incorrectly told a defendant that he could lawfully possess a firearm. *See Whitten v. State*, 690 N.W.2d 561, 566 (Minn. App. 2005). The postconviction court further determined that this case is factually similar to another court of appeals case holding that the defendant's conviction for ineligible person in possession of a firearm where a change in the law made the defendant ineligible after his conviction did not violate constitutional prohibitions on ex-post facto laws or the defendant's procedural due process rights. *See State v. Grillo*, 661 N.W.2d 641, 645 (Minn. App. 2003). On appeal to the court of appeals and in his petition for review, Underwood has only raised a due process argument; he has not argued that his conviction violates the ex post facto clause of either the U.S. or Minnesota Constitution.

postconviction petition, agreeing that Underwood's due-process rights were not violated, and his plea was valid because Minn. Stat. § 624.713 does not require a defendant to know of their ineligibility status. *Underwood*, 8 N.W.3d at 661.

We granted Underwood's petition for review.

**ANALYSIS**

Underwood makes two arguments: (1) his conviction for possession of a firearm by an ineligible person violated his due process rights under the Minnesota Constitution and the U.S. Constitution, and (2) his guilty plea is invalid, and he must be allowed to withdraw it as necessary to correct a manifest injustice. We address each argument in turn.

I.

We first address Underwood's argument that his conviction for possession of a firearm by an ineligible person, which was based on the lifetime ban enacted by the Legislature in 2003, violated his due process rights. Underwood asserts that the conviction violated his due process rights because his 2000 discharge order informed him, albeit correctly at the time it was issued, that he would be eligible to possess a firearm after 10 years had elapsed. We disagree.

We review the denial of a petition for postconviction relief for an abuse of discretion. *Evans v. State*, 8 N.W.3d 642, 648 (Minn. 2024). A district court abuses its discretion when it exercises its discretion in an arbitrary or capricious manner, bases its ruling on an erroneous view of the law, or makes clearly erroneous factual findings. *Martin v. State*, 969 N.W.2d 361, 363 (Minn. 2022). We review the district court's factual findings for clear error and its legal conclusions de novo. *Evans*, 8 N.W.3d at 648. Whether a due

8

process violation has occurred is a question of law. *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

The United States and Minnesota Constitutions prohibit the State from depriving a criminal defendant of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7.[9] The United States Supreme Court has held that due process prohibits the government from misleading individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations. In *Raley v. Ohio*, the U.S. Supreme Court reversed the conviction of three individuals who had refused to answer questions before the Ohio Un-American Activities Commission, citing a due process violation. 360 U.S. 423, 437–39 (1959). The Commission, acting on behalf of the State, had mistakenly informed the witnesses that they had the right to rely on a state constitutional privilege against self-incrimination, even though a state statute negated the privilege by granting immunity from criminal prosecution to any person testifying before a legislative committee regarding the matter to which the witnesses testified. 360 U.S. 423, 431, 437–39 (1959). The witnesses were called before the Commission and asked questions related to their political activities. *Id.* at 427–29. Relying on the government officials' direction that they could invoke the privilege against self-incrimination, each of the witnesses asserted the privilege and refused to answer the

---

[9] "We generally do not construe the Minnesota Constitution to provide more protection for individual rights than the United States Constitution unless there is a principled basis to do so." *Rew v. Bergstrom*, 845 N.W.2d 764, 794–95 (Minn. 2014) (citation omitted) (internal quotation marks omitted). Underwood does not argue that, in the circumstances presented in this case, the Minnesota Constitution provides more protection for individual rights than the United States Constitution.

Commission's questions. *Id.* The witnesses were subsequently indicted on charges of contempt for their failure to answer the Commission's questions and found guilty. *Id.* at 432–33. The U.S. Supreme Court described the act of "convicting a citizen for exercising a privilege which the State clearly had told him was available to him," as "the most indefensible sort of entrapment," violating the Due Process Clause of the Fourteenth Amendment. *Id.* at 438–39; *see also Cox v. Louisiana*, 379 U.S. 559, 568–71 (1965) (holding that where a police official, in effect told demonstrators that they could meet across the street from, but not closer to, a courthouse, due process did not permit conviction under a statute punishing picketing near a courthouse).[10]

We adopted the *Raley* Court's reasoning in *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 854 (Minn. 1991).[11] In *McDonnell*, law enforcement read one of the defendants the Minnesota Implied Consent Advisory that inaccurately informed her that refusal to submit to testing could expose her to criminal penalties, which, in her case, did not apply. *Id.* at 853. The defendant submitted to testing because she thought that she would be subject to criminal penalties if she refused. *Id.* at 851. The defendant's driver's license was subsequently revoked because the test indicated her alcohol concentration exceeded the legal limit. *Id.* Invoking the *Raley* Court's prohibition on "active misleading"

---

[10] Underwood also cites *United States v. Laub*, 385 U.S. 475 (1967), and *United States v. Pa. Indus. Chem. Co.*, 411 U.S. 655, 674 (1973), to support his argument. These cases are inapposite because they address due process violations involving lack of notice rather than reliance on a government official's statement.

[11] *McDonnell* consolidated three cases for the purposes of oral argument. *McDonnell*, 473 N.W.2d at 850. The issue discussed above pertains to appellant Moser. *Id.* at 851, 853–55.

10

by government officials, we held that the defendant's due process rights had been violated because law enforcement—through the Implied Consent Advisory—threatened criminal charges that the State was not authorized to impose in that case. *Id.* at 854–55.

Underwood's case is distinguishable from both *Raley* and *McDonnell*. The defendants in those cases relied on statements by government officials that actively misled them by misstating the law at the time the defendants acted. *Raley*, 360 U.S. at 437–39; *McDonnell*, 473 N.W.2d at 853–55. In Underwood's case, no government official misrepresented Underwood's legal obligations. Underwood argues that the district court "assured" him in its 2000 discharge order that he could possess a firearm 10 years after his civil rights were restored. Not so. Unlike *Raley* and *McDonnell*, where the government officials misstated the law, here, the district court accurately stated the then-current law. *See* Minn. Stat. § 624.713, subd. 1(b) (2000). The district court did not advise Underwood that the order would *ensure* his eligibility to possess firearms past the 10-year prohibition. We therefore conclude that because the government—through the discharge order—did not mislead Underwood regarding his legal obligations under the then-existing version of Minnesota Statutes section 624.713, subdivision 1, and the Legislature later modified those obligations by amending the statute, the State did not violate Underwood's due process rights by charging him for a violation of the amended statute.

Furthermore, even assuming that Underwood was unaware of the change in the law, Underwood's conviction does not violate due process. To clarify, Underwood does not dispute that he knew he had committed a crime that impacted his right to possess a firearm, he disputes that he did not know the length of his prohibition. In 2003, the Legislature

11

amended the statute, changing the 10-year prohibition to a lifetime prohibition on the possession of firearms. *See* Act of Apr. 28, 2003, ch. 28, art. 3, §§ 8, 10, 2003 Minn. Laws 265, 293–94, 296 (codified as amended at Minn. Stat. § 624.713, subds. 1, 3 (2024)).[12] The legislative amendments modified Underwood's right to possess a firearm three years after he was discharged from probation (while he was still under the 10-year ban) and 18 years before the State charged him with unlawful firearm possession. "It is a deeply rooted concept of our jurisprudence that ignorance of the law is no excuse. All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities." *State v. King*, 257 N.W.2d 693, 697–98 (Minn. 1977) (citations omitted); *accord State v. Calmes*, 632 N.W.2d 641, 648 (Minn. 2001). Underwood is presumed to have known that the Legislature amended the statute to include a lifetime prohibition. He cannot now rely on the 2000 discharge order to argue that he is exempt from the statutory change.

Accordingly, we conclude that Underwood's conviction for possession of a firearm by an ineligible person does not violate his due process rights because a government official did not mislead him regarding his legal obligations. Moreover, Underwood, like all citizens, was presumed to know that the Legislature had amended the statute that changed his legal obligations in light of his conviction.

---

[12]     Minnesota Statutes § 242.31, subd. 2(a), was likewise amended to state, "The order of discharge must provide that a person who has been convicted of a crime of violence . . . is not entitled to ship, transport, possess, or receive a firearm for the remainder of the person's lifetime."

## II.

We next turn to Underwood's argument that his guilty plea was invalid. The validity of a guilty plea is a question of law we review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A court must allow a defendant to withdraw a guilty plea, if "withdrawal is necessary to correct a manifest injustice." *Id.* (quoting Minn. R. Crim. P. 15.05, subd. 1). A manifest injustice occurs when a district court accepts an invalid guilty plea. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). A guilty plea is invalid if it is not accurate, voluntary, or intelligent. *State v. Jones*, 7 N.W.3d 391, 395 (Minn. 2024). "Accuracy requires that the plea be supported by a proper factual basis . . . ." *Id.* (citation omitted) (internal quotation marks omitted). A proper factual basis establishes the elements of the offense to which a defendant is pleading guilty. *See id.* at 395–96. The defendant bears the burden of showing his plea was invalid. *Raleigh*, 778 N.W.2d at 94.

Underwood argues that he should be allowed to withdraw his guilty plea because he did not admit to all elements of the crime of ineligible person in possession of a firearm. Specifically, Underwood argues that his guilty plea is not accurate because he never admitted that he knew of his ineligibility status at the time he possessed a firearm.[13] The question before us is whether the State must prove a defendant's knowledge of their ineligibility status for the defendant to plead guilty to a conviction for ineligible person in possession of a firearm under Minnesota Statutes section 624.713, subdivision 1(2).

---

[13]     During Underwood's plea colloquy, the State asked, "But you also knew that you were prohibited from possessing [firearms] because of [your] prior conviction; is that right?" Underwood answered, "No ma'am. I didn't know a felony from 20 years prior would [a]ffect–" The district court judge interrupted Underwood at that point.

Accordingly, we will first interpret section 624.713, subdivision 1(2), to determine the mens rea requirement, if any, and then examine whether Underwood's guilty plea was accurate in light of that interpretation.

A.

Underwood's argument presents us with a question of statutory interpretation. "The interpretation of a statute is a legal question that we review de novo." *State v. Schwartz*, 957 N.W.2d 414, 418 (Minn. 2021). We must first consider whether the statutory language, on its face, is ambiguous. *State v. Robinson*, 921 N.W.2d 755, 758 (Minn. 2019). Statutory language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015) (citing *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012)). If the statutory language has only one reasonable interpretation, it is unambiguous, and we must enforce the plain meaning. *Id.* If the statute is unambiguous, we will not consider the tools of statutory construction that may be applied when a statute is ambiguous. *State v. Bee*, 17 N.W.3d 150, 153 (Minn. 2025). "The objective of statutory interpretation is to ascertain and effectuate legislative intent." *Schwartz*, 957 N.W.2d at 418 (citing Minn. Stat. § 645.16 (2024)). We will first analyze the plain language of the statute, and then—because Underwood's claim implicates principles of strict criminal liability—we will determine whether the Legislature evidenced a clear intent to impose strict criminal liability before deciding what mens rea requirement to impute into the statute. *See State v. Neisen*, 415 N.W.2d 326, 329 (Minn. 1987) (requiring clear legislative intent for the court to determine an offense imposes strict criminal liability).

14

1.

We begin our statutory analysis with the relevant text because "[t]he plain language of the statute is our best guide to the Legislature's intent." *Rodriguez v. State Farm Mut. Auto. Ins.*, 931 N.W.2d 632, 634 (Minn. 2019). The statute at issue states that "a person who has been convicted of . . . a crime of violence" may not "possess ammunition or a pistol or semiautomatic military-style assault weapon or . . . any other firearm." Minn. Stat. § 624.713, subd. 1(2). On the text alone, the statute does *not* require the defendant to know of their ineligibility status because the Legislature did not include express language to create such a requirement. *See generally* Minn. Stat. § 609.02, subd. 9(1) (2024) ("When criminal intent is an element of a crime . . . such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' "). As a general rule, we do not add words or phrases not supplied by the Legislature to an unambiguous statute. *See, e.g.*, *Firefighters Union Loc. 4725 v. City of Brainerd*, 934 N.W.2d 101, 110 (Minn. 2019) ("[W]e cannot read a motive element into the statute because the Legislature did not write one."). "To do so would violate a basic rule of interpretation, as we do not add words or phrases to unambiguous statutes or rules." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 604 (Minn. 2014). By its plain language, Minnesota Statutes section 624.713, subdivision 1(2), does not include an offender's knowledge of their ineligible status as an element of the offense.[14]

---

[14]     Underwood's argument relies heavily on a U.S. Supreme Court case interpreting 18 U.S.C. § 922(g), a federal unlawful possession of a firearm statute, and 18 U.S.C. § 924(a)(2), a federal sentencing statute. *See Rehaif v. United States*, 588 U.S. 225, 229 (2019) (citing 18 U.S.C. §§ 922(g), 924(a)(2)).

2.

Our statutory analysis does not end here, though, because Minnesota Statutes section 624.713, subd. 1(2), establishes a criminal offense, and in general, criminal offenses require both an actus reus and a mens rea. "Mens rea is the element of a crime that requires the defendant know the facts that make his conduct illegal." *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012) (citation omitted) (internal quotation marks omitted). We have explained that when "a criminal statute does not require the defendant to know the facts that make the conduct illegal, the crime is considered to be a strict liability offense." *Schwartz*, 957 N.W.2d at 419.

---

In *Rehaif*, the U.S. Supreme Court held that the federal sentencing statute which, at the time of Rehaif's conviction, authorized imprisonment for up to 10 years, if a person "knowingly" violates section 922(g), required an individual to know not only that he possessed a firearm, but also that he had the relevant status when he possessed the firearm. *Rehaif*, 588 U.S. at 231. Specifically, the federal sentencing statute provided that "[w]hoever *knowingly* violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2) (2021) (emphasis added). The U.S. Supreme Court extended the "knowing" mens rea requirement from the federal sentencing statute to the material elements articulated in section 922(g). *Rehaif*, 588 U.S. at 229–30.

No such mens rea requirement exists in the state sentencing provision such that we might extend it to subdivision 1(2). *See* Minn. Stat. § 624.713, sub. 2(b) ("A person named in subdivision 1, clause (2), who possesses any type of firearm or ammunition is guilty of a felony and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $30,000, or both.").

Underwood's argument is unpersuasive because *Rehaif* interpreted a federal statute which included an explicit and general mens rea requirement. Unlike the statute at issue in *Rehaif*, Minnesota Statutes section 624.713, subdivision 2(b), contains no knowledge requirement in the text of the statute. Because this case presents a question of statutory interpretation and the text of the statutes in *Rehaif* and Underwood's case are different, we reject Underwood's argument that *Rehaif* applies. Instead, we resolve the issue under state statutory interpretation principles.

16

On its face, Minnesota Statutes section 624.713, subdivision 1(2), could be interpreted to impose strict criminal liability because the statutory language alone does not expressly require the defendant to know the facts that make his conduct illegal. Although we have acknowledged that a person must knowingly possess a firearm, knowing possession of a firearm is not the fact that makes the conduct illegal. *See State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015) (stating that "we have made it clear, at least with respect to the felon-in-possession statute, that knowledge of the prohibited item is required"); *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017) (noting, in the context of a sufficiency of the evidence claim, that possession of a firearm by an ineligible person requires the State to prove, in relevant part, the defendant knowingly possessed the firearm); *cf. Ndikum*, 815 N.W.2d at 822.[15] In certain circumstances, an individual could knowingly possess a firearm without violating the law. The defendant would need to know another fact, then, to know their conduct is illegal. Because the statutory language does not expressly require the defendant to know the facts that make their conduct illegal, the crime of ineligible person in possession of a firearm would impose strict liability without another mens rea requirement.

---

[15] In *Ndikum*, we interpreted Minnesota Statutes section 624.714, subdivision 1a (2024), which criminalizes carrying a pistol in a public place without a permit. *Ndikum*, 815 N.W.2d at 818. Even though the statute did not include a mens rea requirement, we held that the State must prove, as an element of the offense, that the defendant knowingly possesses the pistol. *Id.* at 822. Consistent with *Harris* and *Ndikum*, the jury instructions district courts typically use require the State to prove knowing possession for a defendant to be convicted of ineligible person in possession of a firearm. *See* 10A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 21.01 (7th ed. 2024) (citing *Ndikum*, 815 N.W.2d at 822).

Strict liability criminal offenses are "generally disfavored." *In re Welfare of C.R.M.*, 611 N.W.2d 802, 805 (Minn. 2000); *see also Staples v. United States,* 511 U.S. 600, 606 (1994). We have previously explained that "[t]he rulings of the United States Supreme Court and this court . . . highlight the long established principle of American criminal jurisprudence that in common law crimes and in felony level offenses mens rea is required." *C.R.M.*, 611 N.W.2d at 808. When construing a criminal statute that does not include an express mens rea requirement, we undertake a "careful and close examination of the statutory language" to determine whether the Legislature intended to create a strict liability offense. *Id.* at 805; *Ndikum*, 815 N.W.2d at 820–21 (citation omitted) (internal quotation marks omitted). In doing so, we are "guided by the public policy that if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." *Neisen*, 415 N.W.2d at 329. Therefore, we must next look to the language of the statute to determine whether the Legislature intended to impose strict liability.

To begin, the Legislature did not include any language expressly dispensing with a mens rea requirement, which would be a clear indication of the Legislature's intent to impose strict liability. *See, e.g.*, *State v. Morse*, 161 N.W.2d 699, 700 (Minn. 1968) (interpreting a statute that expressly stated that criminal intent did not require proof of knowledge of a minor's age in an indecent liberties statute). In fact, the Legislature neither *dispensed* with a mens rea requirement nor *included* a mens rea requirement for this offense or for any of the other offenses contained within the same statute. *See* Minn. Stat. § 624.713. Accordingly, we cannot conclude that the omission was intentional. That is

because "[w]hen the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used." *Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 800 (Minn. 2019). Here, the Legislature did not include mens rea for some offenses in the statute while intentionally dispensing with it in others. To the contrary, the statute is simply silent as to mens rea for all the offenses in the statute. As such, we cannot conclude that the omission of a mens rea requirement in this offense was intentional and that the Legislature demonstrated clear legislative intent to impose strict criminal liability.

Furthermore, we have been less likely to approve the imposition of strict liability for offenses that impose felony-level penalties. *See, e.g.*, *Ndikum*, 815 N.W.2d at 822 ("We have also considered the severity of the penalty for a crime to be an important factor in determining whether the Legislature intended to dispense with mens rea as an element of that crime."); *C.R.M.*, 611 N.W.2d at 810 (discussing the omission of a mens rea requirement and noting a "heightened concern when it relates to felony level crimes"). Because a conviction of this crime results in a severe penalty—a felony with a mandatory minimum sentence of five years and potential monetary damages—it is unlikely that the Legislature intended to impose strict criminal liability. Minn. Stat. § 609.11, subd. 5(b) (2024) (providing that "any defendant convicted of violating section . . . 624.713, subdivision 1, clause (2), shall be committed to the commissioner of corrections for not less than five years"); Minn. Stat. § 624.713, subd. 2(b) (providing for a maximum sentence of 15 years or payment of a maximum fine of $30,000, or both). Given the longstanding

19

presumption against strict liability crimes, and based on the omission of any express knowledge requirement for other offenses in the same statute and the severity of the penalty for this crime, we conclude that the Legislature did not clearly express an intent to create a strict liability offense under Minnesota Statutes section 624.713, subdivision 1(2).

3.

Having determined that the Legislature did not intend to impose strict criminal liability, we impute a mens rea requirement so that the offense requires the defendant to know the facts that make his conduct illegal. *See, e.g.*, *Ndikum*, 815 N.W.2d at 822 (imputing a *knowingly* mens rea requirement for a defendant to be convicted of possession of a pistol in public where the statute was silent as to mens rea). Underwood argues that the State must prove a defendant knew of their ineligibility status. Although we agree that defendants must know an additional fact, we disagree that the fact the State must prove is the defendant's knowledge of their ineligibility status.

The text of Minnesota Statutes section 624.713, subdivision 1(2) does not support the conclusion that a defendant must know of their ineligibility status. The statute provides, "[t]he following persons shall not be entitled to possess . . . any . . . firearm: . . . a person who has been convicted of . . . a crime of violence." Minn. Stat. § 624.713, subd. 1(2). This statutory text does not mention ineligibility status. In fact, the Legislature only included the term "ineligible" in two headnotes within the statute, and "headnotes . . . are mere catchwords to indicate the contents of the section or subdivision and are not part of the statute." Minn. Stat. § 645.49 (2024); *accord* Minn. Stat. § 3C.08, subd. 3 (2024); *see also Buzzell v. Walz*, 974 N.W.2d 256, 264 n.7 (Minn. 2022). Because the Legislature did

20

not include ineligibility status as part of the legally binding statutory text, we conclude that it is not a fact the defendant must know to be convicted of ineligible person in possession of a firearm.

Rather than ineligibility status, the Legislature chose to include a different fact in the statutory text—the defendant's previous "convict[ion] of . . . a crime of violence." Minn. Stat. § 624.713, subd. 1(2). This is the fact that the defendant must know to make their conduct illegal. That is, it is the defendant's conviction of a crime of violence that makes their possession of a firearm illegal conduct.[16] We therefore conclude that the crime of ineligible person in possession of a firearm, under Minnesota Statutes § 624.713, subdivision 1(2) (2024), requires the State to prove that a defendant knew of their previous conviction, which was a crime of violence.

B.

Having interpreted Minnesota Statutes section 624.713, subdivision 1(2), to require that a defendant have knowledge of their previous conviction—but not to require that a defendant have knowledge of their ineligibility status—we now turn to the accuracy of Underwood's plea in this case. During Underwood's factual basis, the State proved that he

---

[16] To be clear, a defendant need not know their previous conviction is a crime of violence as defined in Minnesota Statutes section 624.712, subdivision 5. It is sufficient for the purposes of Minnesota Statutes section 624.713, subdivision 1(2), that the defendant knows they were previously convicted of committing a crime. Whether that crime constitutes a "crime of violence" requires application of the law rather than proof of a fact. *See* Minn. Stat. § 624.712, subd. 5 (defining "crime of violence" and listing crimes that constitute crimes of violence).

21

had the requisite knowledge to be convicted of ineligible person in possession of a firearm.

The following occurred during his plea colloquy:

> [THE STATE]: All right. Now, you are prohibited from possessing a firearm because of a prior felony conviction, a third degree assault, with court file number 19-K1-98-00052; is that right?
>
> [UNDERWOOD]: What year is that?
>
> THE COURT: It's a 1998 case.
>
> [THE STATE]: Correct.
>
> [UNDERWOOD]: Correct.

Underwood admitted that he knew he had been convicted of a third-degree assault. Third-degree assault is a crime of violence which precludes an individual from possessing a firearm. Minn. Stat. § 624.713, subd. 1(2); Minn. Stat. § 624.712, subd. 5 (including third-degree assault in the definition of "crime of violence"); *see also* Minn. Stat. § 609.223 (articulating the crime of third-degree assault). Underwood's guilty plea was accurate because it was supported by a proper factual basis. Because Underwood's guilty plea was accurate, it was therefore valid and withdrawal is not necessary to correct a manifest injustice.

Because we have determined that the State needs to prove that a defendant knew of their previous conviction, which was a crime of violence, and that requirement was met here, we conclude that Underwood's guilty plea was constitutionally valid and need not be withdrawn to correct a manifest injustice. Accordingly, we reject Underwood's challenge to the validity of his guilty plea and affirm his conviction.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.